## PRYZBYLOWICZ v. MISSOURI RIVER R. CO.

*(Circuit Court, D. Kansas.* November, 1881.)

1. CONSTITUTIONAL LAW — COMPENSATION FOR PRIVATE PROPERTY TAKEN FOR PUBLIC USE.

The payment of compensation to the owner of private property taken for a public use is a condition precedent to any right divesting the owner of his possession, and a judgment in his favor for the value of the land, unpaid and unsecured, is not compensation made, and does not justify the dispossessing the owner of his property.

2. SAME—ESTOPPEL—ACQUIESCENCE OF OWNER.

The owner of land may, by his own act, estop himself from demanding actual payment of compensation as a condition precedent to the taking for public uses, and if he expressly consents, or, with full knowledge of the taking, makes no objection, but permits a public corporation to enter upon his land and expend money, and carry into operation the purposes for which it is taken, he may not then be permitted to eject the parties from possession for want of payment of the compensation.

3. SAME—RAILROAD TAKING LAND.

Where the owner of land has knowledge that a railroad company has taken possession of his land and makes no objection, but permits the company to build its road and operate its trains over the land, and exercises all the rights appertaining to a right of way for public uses for a period of 10 or 12 years, he or his grantee cannot be permitted to eject the company from the land.

Motion for New Trial.

FOSTER, J. The constitution of the United States provides that private property shall not be taken for public use without just compensation, etc. The constitution of this state contains the wise and salutary provision that right of way shall not be taken by any corporation without full compensation therefor be first made, etc. And the supreme court of this state, and the courts of other states having a like provision, hold that the payment of this compensation is a condition precedent to any right divesting the owner of his possession; that a judgment in his favor for the value of the land, unpaid and unsecured, is not compensation made, and does not justify the dispossessing the owner of his property. With this rule of law we are in full accord, and regard it as based upon the highest and most sacred principles of justice.

But going hand in hand with this doctrine is another rule of law, which is also well grounded in justice and right, and which is recognized and enforced by the courts, and that is that the owner of the land may, by his own act, estop himself from demanding actual payment of the compensation as a condition precedent to the taking for public uses. If the owner gives license, either express or fairly implied; if he expressly consents, or, with full knowledge of the taking, makes no objection, but permits the public corporation to enter upon and expend money and carry into operation the purposes for which it is taken,—he may not then be permitted to eject the parties from the possession for want of payment of the compensation.

The plaintiff in this case has no higher or greater rights in law or equity than Mrs. Mills, his grantor, would have if she was the plaintiff in this action. And if his grantor would have been estopped, then this plaintiff is estopped.

If Mrs. Mills had knowledge that this railroad company had taken possession of this land, and made no objection, but permitted the company to build its road and operate its trains over this land, and exercise all the rights appertaining to a right of way for public uses for a period of 10 or 12 years, she cannot now be permitted to eject the company from the land.

I have found, from all the evidence in this case, that Mrs. Mills did have this knowledge, and did acquiesce in the possession of the railroad company. It is true, there was no direct and positive evidence as to whether she did or did not have such knowledge and make such acquiescence, but, in the absence of any evidence on this point, it would not be a rash presumption to hold that an open, palpable, and notorious possession by the railroad company for a period of so many years would not likely occur without knowledge of the owner, living much of the time in the vicinity of the land. But in addition to this, in the condemnation proceedings this land is mentioned as a part of the right of way of the said road. Mr. Mills, her husband, gave his written consent that the road might pass through his land, (presumably this land of his wife.)

Mrs. Mills had relatives living in Leavenworth, and visited there herself. She also had an agent there who looked after her land and paid taxes on it, as I remember the evidence, and she probably had traveled over this road in going to or from Leavenworth. From all these facts and circumstances, it requires greater credulity than I am possessed of to believe she had no knowledge of the possession of the railroad company.

On these facts, and the law applicable thereto, this plaintiff cannot recover, and the motion for a new trial must be overruled.