CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. GEORGE ENGLEHART.

FILED JANUARY 19, 1899. No. 8667.

1. **Eminent Domain:** RIGHT OF WAY: PUBLIC LANDS: DAMAGES. No provision of the constitution makes compensation for the easement a precedent condition to the right of the state to permit a railroad company to construct and operate a line of road over the saline or other public lands.

2. ———: ———: ———. Whether it is within the competency of the legislature to donate to a railroad company a right of way over the saline or other lands under the control of the state, *quære*.

3. ———: ———: EJECTMENT. The owner cannot maintain ejectment for land upon which a corporation has, with his prior assent or subsequent acquiescence, constructed and put in operation

a railroad used by it in its business as a common carrier of freight or passengers.

4. ———: ———: RAILROADS: COMPENSATION. A railroad construcle l upon land with the permission or acquiescence of the owner becomes a permanent structure, and the resulting right to compensation is a mere personal claim which will not pass to a purchaser of the land, except under the terms of an express grant.

ERROR from the district court of Lancaster county. Tried below before HALL, J. *Reversed.*

*J. W. Deweese* and *F. E. Bishop,* for plaintiff in error.

*Frank A. Boehmer* and *N. Rummons, contra.*

SULLIVAN, J.

This was an action of ejectment brought by George Englehart against the Chicago, Burlington & Quincy Railroad Company. The real estate in dispute is a strip 200 feet wide extending across forty acres of the saline lands in Lancaster county. Continuously since 1879 this property has been occupied and used by the defendant and its predecessors in right as a roadway for their trains.

The plaintiff's claim to possession is based on a contract of purchase of the forty acres aforesaid obtained from the state in 1894. Section 105 of chapter 16, Compiled Statutes 1897, declares: "Any railroad corporation shall be authorized to pass over, occupy, and enjoy any of the school, university, saline, or other lands of this state." By the same section the right of way is limited to a width of 100 feet on either side of the center of the track, and it is provided that upon filing with the secretary of state, and with the county clerk of the county in which the land is situated, a duly certified and acknowledged plat of the line of the road, any such corporation may enter upon the lands selected and construct its roadway. For two years from the filing of such plat the railroad company is given a vested right in the land

selected, surveyed, and platted, and is entitled to receive from the state a patent therefor upon making proof to the satisfaction of the governor that its road has been completed. It is further provided that "no subsequent grant from the state to any other person or corporation of any tract of land including such right of way * * * so platted, and the plat thereof filed as aforesaid, though not excepted in such grant, shall divest said railroad corporation of their rights in the same under this act." The defendant's road was constructed and in operation nearly a year before the plat contemplated by the statute was filed with the secretary of state, or with the county clerk of Lancaster county. No patent has ever been obtained. Plaintiff contends that the original entry upon the land was unlawful and that the company's occupancy of the property is that of a mere trespasser. The obvious purpose of the legislature was to encourage railroad building by donating necessary easements over the public lands. The state might insist on a strict compliance with the methods prescribed for the acquisition of a right of way, or it might waive them. In this case they were waived. The substantial thing upon which the right to a free easement depended was the construction of the road. The other formalities appointed by the legislature were technical, non-essential, and concerned only the corporation and the state. The company and its predecessors were in undisputed occupancy of the property for more than fourteen years before the plaintiff obtained his contract of purchase. He had actual and constructive notice of the defendant's rights. The state has never questioned, and does not now deny, the lawfulness of defendant's possession. It has, for nearly twenty years, affirmed the company's ownership by receiving taxes charged against the property as part of the Burlington system in this state. The plaintiff cannot now predicate a substantial claim upon the state's waiver of a technical right.

The doctrine is now settled by overwhelming authority

that the owner cannot maintain ejectment for land upon which a corporation has, with his prior assent or subsequent acquiescence, constructed and put in operation a railroad used by it in its business as a common carrier of freight or passengers.   Public policy forbids the dismemberment of the road, and restricts the landowner to the remedy provided by the statute for the assessment of his damages.   Discussing a question quite similar to the one here under consideration Mr. Justice Shiras, in *Roberts v. Northern P. R. Co.*, 158 U. S. 1, said: "The conclusion, therefore, seems warranted that, as to those portions of the lands in question which are occupied and used by the railroad company, the county, having stood by for years and permitted the company to proceed in the construction of its road and appurtenances at a vast expense, and having accepted large sums as taxes, would be estopped from interfering with the possession of the railroad company."   In the same opinion the author says: "It has frequently been held that if a landowner, knowing that a railroad company has entered upon his land and is engaged in constructing its road without having complied with the statute,   *   *   *   remains inactive and permits it to go on and expend large sums in the work, he will be estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein."   The same principle is declared in 7 Ency. Pl. & Pr. 703, in the following language:   "If the landowner, with knowledge of the facts, expressly or impliedly consents to the otherwise unauthorized entry upon and occupation of his land, or acquiesces therein, or stands by and fails to object to or forbid such entry and occupation, until the railroad is in operation, and public interests are involved, and large amounts of money have been expended, he will be estopped from maintaining ejectment for the land."   From an examination of a large number of the authorities cited we are fully satisfied that the text-writer quoted accurately reflects the decisions of the courts.   The reason for the

rule, to the extent that it rests upon considerations of public policy, is well and forcibly stated in a comparatively recent utterance of the supreme court of Indiana. Elliot, J., delivering the opinion in *Indiana B. & W. R. Co. v. Allen*, 113 Ind. 581, said: "Vast interests are often involved in the maintenance of railroads. They are charged with a public service, and a public character is so strongly impressed upon them that courts exercise a control over them much beyond that assumed over individual citizens. They are recognized as instruments of interstate commerce, and, as such, are within the control of the federal congress. * * * They may exercise rights under the power of eminent domain, because of their public character. Towns spring into existence along their lines. Factories, elevators, and warehouses are built upon them. The mails of the nation are carried by them. They are common carriers of freight and passengers. All these interests, and more, combine in demanding that a citizen who has stood by until after the completion of a line of road has involved public interests shall not be allowed to sever the line, and destroy its efficiency, by wresting possession of part of it from the company. The case does not stand upon the ordinary doctrine of estoppel. The great principle of public policy enters as an important factor and controls the judgment of the court." Among the numerous cases sustaining the conclusion reached that ejectment cannot be maintained we cite: *Taylor v. Chicago, M. & St. P. R. Co.*, 63 Wis. 327; *Kittell v. Missisquoi R. Co.*, 56 Vt. 109; *South & N. A. R. Co. v. Alabama & G. S. R. Co.*, 102 Ala. 236; *Scarritt v. Kansas City & S. R. Co.*, 127 Mo. 298; *Louisville, N. A. & C. R. Co. v. Beck*, 119 Ind. 124.

There is another reason why plaintiff cannot succeed in this case, nor in any other form of action. At the time he obtained his contract of purchase the railroad was being operated and was a permanent structure. If the state had any claim against the company, it was a claim for compensation. The easement was gone. The land

was damaged, and any right to compensation resulting from the injury accrued as a personal claim to the owner of the fee. Such claim, irrespective of the statute above quoted, would not pass to a purchaser except under the terms of an express grant. (*McFadden v. Johnson*, 72 Pa. St. 335; *Schuylkill & Susquehanna Navigation Co. v. Decker*, 2 Watts [Pa.] 343; 2 Wood, Railroads 994; *Roberts v. Northern P. R. Co., supra.*) In the last mentioned case the rule is stated as follows: "It is well settled that where a railroad company, having the power of eminent domain, has entered into actual possession of land necessary for its corporate purposes, whether with or without the consent of the owner of such lands, a subsequent vendee of the latter takes the land subject to the burthen of the railroad and the right to payment from the railroad company, if it entered by virtue of an agreement to pay, or to damages, if the entry was unauthorized, belongs to the owner at the time the railroad company took possession."

Considerable space is devoted in the briefs of counsel to a discussion of the constitutional inhibition against donations of the public lands to railroad companies, private corporations, or individuals; but, for the purposes of this case, it is unnecessary to decide whether the grant of a free right of way is within the scope and purpose of the provision, and so forbidden. The right of the state to permit a railroad company to go upon its lands and construct and operate a line of road thereon cannot be seriously questioned. It is possible that the right to compensation for such privilege cannot be waived or abandoned, but if it cannot, then the state may enforce such right whenever it chooses to do so. But, certainly, one purchasing from the state a portion of the public land incumbered with a railroad is not commissioned to act in its behalf, nor substituted to its right. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.