[No. 5760.]

THE DENVER AND RIO GRANDE RAILROAD COMPANY v. DOELZ.

**Limitations — Statute Applies to Way of Railroad — Under** sec. 2251, Gen. Laws 1877 (sec. 3807, Mills' Stats.), the state board of equalization assesses the railways of the state, and their assessment includes the way. The taxes levied under such assessment are lawfully levied, and their payment by the railroad company entitles it to the protection of the seven years' limitation (Laws 1893, c. 118, sec. 6; Rev. Stats., sec. 4089).—(49, 50)

An assessment by the local authorities, of the land traversed by the railroad, without excepting the railroad, is unwarranted; the taxes levied under such assessment are illegal.—(50-52)

*Appeal from Ouray District Court* — Hon. THERON STEVENS, Judge.

Messrs. WOLCOTT, VAILE & WATERMAN, Mr. E. N. CLARK, Mr. CARL J. SIGFRID and Mr. THOMAS L. PHILIPS for appellant.

Messrs. STORY & STORY for appellee.

Mr. JUSTICE MUSSER delivered the opinion of the court:

Plaintiff brought this action in 1904 to recover the possession of certain land on which a portion of the defendant company's roadbed and track was

constructed, and which formed the necessary right
of way for the operation of defendant's line of rail-
way.   In 1887, one Fry, who claimed the land as
a part of a mining placer, executed and delivered
to defendant a deed for the right of way for an
expressed consideration of $400.00.   The defendant,
in good faith, entered upon the land, constructed the
roadbed and track, and ever since as early as 1888
has been running its trains thereon in the regular
prosecution of its business as a common carrier.   At
the time defendant obtained its deed, one Hafer
also claimed the land.   Subsequently, contest pro-
ceedings were had in the United States land office
between Hafer and Fry, which terminated in favor
of the former, and a United States Patent was issued
to him for 160 acres, which included the land in
controversy.   In 1896, Hafer conveyed the 160 acres
to the plaintiff without excepting the right of way.

In one of its defenses, the defendant, by proper
allegations, alleged facts which, if proved, would
give it the benefit of sec. 6 of the Session Laws of
1893, p. 328, sec. 4089, Rev. Stat. 1908, which reads
as follows:

"Every person in the actual possession of lands
or tenements, under claim and color of title, made
in good faith, and who shall, for seven successive
years, continue in such possession, and shall also,
during said time, pay all taxes *legally assessed* on
such lands or tenements, shall be held and adjudged
to be the legal owner of said lands or tenements,
to the extent and according to the purport of his
or her paper title."

A railroad company is entitled to the benefit
of this statute for the protection of its right of way.
*Keener v. U. P. Ry. Co.*, 31 Fed. 126.   The defend-
ant, in its brief, contends that it possessed and had
performed all things necessary to give it the benefit

(4)

of this statute of limitations. In his answering brief, the plaintiff does not contend that the claim and color of title, good faith and possession shown on behalf of defendant are insufficient to satisfy the statute as to each of these elements, but claims that it was not shown that defendant, for seven successive years, had paid all taxes legally assessed on the premises. So that the only question raised in the briefs on the sufficiency of the evidence to establish the defense of the statute is as to the payment of taxes. It was proven that the defendant paid all the taxes assessed against it as a railroad, which included the assessment of the right of way in question, for more than seven successive years prior to the commencement of the action, and from and including the year 1896. It was also proven that the 160 acres of the plaintiff, which included the right of way, were assessed by the assessor of the county for the taxes of the years 1899, 1901 and 1902, without excepting from the assessment the right of way in question, and the plaintiff, for those years, paid the taxes on his land as assessed in each of those years before the defendant paid its railroad taxes. The plaintiff contends that this evidence shows that the defendant did not pay all taxes legally assessed. If it be assumed that the assessment of plaintiff's land, by the assessor, in this manner, was an assessment of the right of way, and the payment of the taxes by plaintiff as a payment of taxes on the land, including the right of way, then it appears that the right of way was doubly assessed, once by the state board of equalization, as provided by statute for the assessment of railroad property, and once by the assessor of the county, and that both parties paid the taxes in each of these years. Which one paid the taxes legally assessed for those years? Section 3807, Mills' Ann.

Stat., sec. 2251, Gen. Laws 1877, provides that the state board of equalization shall make assessments upon railways within the state, and shall include the right of way, roadbed, bridges, etc. It was under this section that defendant's railroad was assessed up to the time of its assessment under the Revenue Act of 1902. The latter act likewise similarly provides that the state board of equalization shall assess all the property used or controlled by railway companies with certain exceptions not important here.

In *Carlisle v. Pullman P. C. Co.*, 8 Colo. 320, this court, referring to sec. 3807, Mills' Ann. Stat., at p. 326, said:

"This section provides for the assessment and taxation of all the property, real and personal, 'owned,' 'belonging to,' and 'used' by railroad corporations in the operation of their roads in this state. The railroad officials are required to make full returns of all such property; regulations are prescribed for its valuation and taxation, and the powers and duties of the revenue officials, state and county, with respect to this class of property, are distinctly defined. This section was evidently intended to cover the entire subject of the taxation of railroad property, and to leave nothing used by these corporations out of the list of taxable property, regardless of the condition of the title, and whether the line of railroad lay wholly within the state, or partly within and partly beyond its limits."

And on pages 328 and 329:

"As we construe section 2251, the county officials are authorized to assess the real estate of these corporations, together with the improvements thereon, 'not including any portion of the road itself,' situated in their respective counties, and they are likewise authorized to levy taxes upon their *pro rata*

distribution of the entire assessment of the remainder of the property owned and used by the railways, the jurisdiction to assess which is conferred to in the state board of equalization. The entire road within the state, with all the rolling stock and personal property of every kind entering into its equipment, is to be assessed as a whole, and this is to be done by the state board. They are to value the road at a uniform rate per mile of main track, and add to the value of each mile a *pro rata* distribution of the whole valuation of the rolling stock and other personalty."

This decision of our own court compels the conclusion that the right of way in question was to be assessed by the state board of equalization, and that the taxes paid by the defendant company were levied or assessed upon a valuation or assessment of the property legally made, and were, therefore, legally assessed, and those paid by the plaintiff were not legally assessed because they were levied upon a valuation or assessment not legally made. A like conclusion was also reached by the supreme court of Illinois, under a similar assessment statute and substantially the same facts. *C. M. & St. P. Ry. Co. v. Grant,* 167 Ill. 489. The defense of the statute of limitations pleaded by defendant was fully established.

The judgment of the lower court is, therefore, reversed and the cause remanded with instructions to enter judgment for defendant.

*Reversed and remanded.*

Decision *en banc:*

CHIEF JUSTICE STEELE, Mr. JUSTICE BAILEY and Mr. JUSTICE WHITE concur. Mr. JUSTICE GABBERT concurs specially. Mr. JUSTICE CAMPBELL and Mr. JUSTICE HILL not participating.

Decided July 6, A. D. 1910; rehearing denied Nov. 14, A. D. 1910.

Mr. JUSTICE GABBERT, specially concurring:

While I concur in the conclusion of the majority, I express no opinion on the proposition on which it is based, but reach the same conclusion from the facts which I shall state, and upon a proposition fully argued by respective counsel, namely, that plaintiff's grantor could not maintain any action except for the value of the land; and that plaintiff took the land subject to the burden of the railroad, but cannot maintain an action for damages because such right did not pass with the land.

Appellee, Doelz, claiming to be the owner of a strip of land occupied by the appellant as a right of way for its railroad, brought suit against the appellant to recover the possession of such land, and damages for the alleged wrongful taking and withholding possession thereof by the latter. On the issues made by the pleadings, a trial to the court resulted in a judgment in favor of the plaintiff, to the effect that he was the owner of the strip of land in controversy; entitled to the possession thereof; that his damages for the wrongful withholding was the sum of $137.20, and that the issuance of a writ of possession be stayed for a period specified in order to enable the defendant to institute condemnation proceedings for the land in controversy, if so advised. The material facts, so far as necessary to consider, are substantially as follows:

In September, 1884, the premises involved were embraced in a location upon the public domain, known as the Pericles placer. In 1887 the defendant purchased from the holder of the record title to this placer the strip involved, at which time it had already located and partially constructed its line

of railway thereover, which it completed before the end of that year. Before this purchase, one Hafer had claimed the land embraced in the placer either under the Homestead or Pre-emption laws. A contest between Hafer and the owner of the placer initiated in the United States local land office resulted in a decision holding that Hafer's rights were superior to those of the placer claimant, and in 1889 a receiver's receipt was issued to Hafer, and patent in 1891. In September, 1896, Hafer conveyed to the plaintiff the premises for which he had received a patent by a warranty deed, containing the usual covenants.

At the time the railroad was constructed over the right of way in controversy, Hafer was living upon the premises which he subsequently patented; knew that the road was being constructed; occupied the premises until some time in 1896, and never at any time made any objection to the construction of the road or claimed that he was the owner of the disputed premises. When plaintiff purchased he knew the right of way was occupied by the defendant, but he never asserted any claim thereto, nor did he demand the possession thereof from the defendant, until a short time before he instituted his action, which was in February, 1904. From the time the railroad company completed its line, which was in the latter part of 1887, it has operated it continuously in connection with its system, as the branch between Montrose and Ouray.

Of the several questions urged by counsel for appellant in support of their contention that the judgment of the district court should be reversed, it is only necessary to consider one, which goes directly to the merits, namely: Whether or not, under the undisputed facts, plaintiff was entitled to

any judgment in his favor, or can maintain any action whatever.

Conceding, as claimed by counsel for plaintiff, that the railroad company obtained no title by virtue of the deed from the owner of the Pericles placer, the question is, Did plaintiff establish, or has he, a cause of action against the railroad company? Under the laws of this state, a railroad company may exercise the power of eminent domain for the purpose of obtaining title to lands for right of way. Where a railroad company having such power has entered into the actual possession of land necessary for its right of way, and constructed its road thereon, whether with or without the consent of the owner of such land, a subsequent vendee of the latter takes the land subject to the burden of the railroad, and the right to damages from the railroad company belongs to the owner at the time the railroad company took possession, and does not pass to his grantee, unless expressly conveyed or assigned. In such circumstances the damages occasioned by the construction of the railroad belong personally to the owner when the injury occurred, and do not run with the land, nor pass by deed, though not reserved.

It is also well settled that if the landowner, knowing that a railroad company has entered upon his land, and is engaged in constructing its road, without having complied with the statute requiring either payment by agreement or proceedings to condemn, remains inactive and permits the company, without objection, to construct its road, he will be estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein, and be restricted to a suit for damages, and a subsequent purchaser with notice cannot maintain either trespass or ejectment

for the land so taken, nor recover damages for the occupation thereof.—*Roberts v. No. Pac. R. R. Co.*, 158 U. S. 1; *Penn. Mut. L. I. Co. v. Austin*, 168 U. S. 685; *Maffet v. Quine*, 93 Fed. 347; *Pryzbylowicz v. Mo. Riv. R. Co.*, 17 Fed. 492; 3 Elliott on Railroads, §§ 1000-1002; *C., B. & Q. R. Co. v. Englehart*, 57 Neb. 444; *No. Pac. R. Co. v. Smith*, 171 U. S. 260; *McAuley v. Western V. R. Co.*, 33 Vt. 311; *Omaha & Northern N. R. Co. v. Redick*, 16 Neb. 313; *Goodin v. Cin. & White Water Canal Co.*, 18 Oh. St. 169; *Denver & S. F. Ry. Co. v. School Dist.*, 14 Colo. 327; *Ind., B. & W. Ry. Co. v. Allen*, 100 Ind. 409.

Applying the law as announced and fully sustained by the foregoing authorities, it is apparent that plaintiff cannot maintain an action against the railroad company. Hafer, his grantor, was estopped by his acquiescence, from maintaining on action to recover the possession of the strip of land in controversy. When plaintiff purchased from Hafer the road was and had been in actual operation over the right of way involved for upwards of eight years, and hence, he was charged with notice of the company's rights. He has no greater right to now oust the railroad company from the possession of his right of way than Hafer had, and as the latter is estopped from asserting such a right, plaintiff is also estopped. Hafer being the owner at the time the company took possession, was, in the circumstances of this case, restricted to an action for damages; but this claim was personal upon his part, and did not pass by his conveyance to the plaintiff.

On behalf of the plaintiff it is urged that as the constitution and statutes of this state on the subject of eminent domain provide that the owner of land shall not be divested of his title until the amount of compensation to which he is entitled has been ascertained and paid, the authorities above

cited do not apply. They make no such distinction, and, in fact, it appears from the language of the opinions in many instances that in the jurisdictions where the cases arose, the same provisions exist as in our state on the subject of eminent domain; but these provisions, although a condition precedent to the acquiring of title by a railroad company, to land taken for right of way, are for the benefit of the landowner, and may be waived by him, which was what happened in this case when Hafer, without objection upon his part, acquiesced in the construction of the railroad over the right of way in controversy.—*McAuley v. Western V. R. Co.*, supra; *Omaha & No. Neb. R. Co. v. Redick*, supra; *Pryzbylowicz v. Mo. Riv. R. Co.*, supra.

Text writers on eminent domain recognize that, generally, ejectment is a proper remedy, where a railroad company enters upon land belonging to another without his consent and without instituting proceedings to condemn the same, or assess damages therefor, yet if the owner, with knowledge of the facts, expressly or impliedly consents to the otherwise unauthorized entry upon and occupation of his land, or acquiesces therein, or stands by and fails to object to, or forbid such entry and occupation until the railroad is in operation, he will be estopped from maintaining ejectment for the land.—7 Ency. Pl. & Pr., 701-703. This rule is grounded upon considerations of public policy. Railroads are charged with a public service. They are common carriers of freight and passengers. The mails of the nation are carried by them. Such public interests and rights demand that a citizen who has stood by without objection until after the completion of a line of railroad over his land shall not be allowed to sever it and destroy its efficiency by wresting the possession of part of it from the company.—*Ind. &*

*B. W. R. Co. v. Allen,* 113 Ind. 581; *C. B. & Q. R. Co. v. Englehart, supra.*

The judgment of the trial court appears to have been predicated upon *D. & R. G. R. Co. v. Wilson,* 28 Colo. 6; but the facts in that case are so radically different from the one at bar, that it does not support the judgment rendered. In the Wilson case, Wilson was a pre-emption settler upon public domain. He notified the railroad company of his claim, and protested against its entering upon his land, and building its road across the same, unless compensation was made, but the company, notwithstanding such protest, proceeded to take possession of, and build its road on, a strip of land across his claim, and it was, therefore, held that he had not waived any of his rights.

It is claimed by counsel for plaintiff that there is no proof that Hafer acquiesced in the building of the railroad across the land by failing to object to its construction. I think the record discloses that the action of Hafer was such as to preclude him from maintaining ejectment. He was living upon the land through which the railroad was constructed at the time of its construction. For something like nine years thereafter he continued to occupy his land. During all this period the road was in active operation. He was a witness in the case. It does not appear that he made any protest or objection to, or demand upon the company, or commenced any action to assert his rights. This, in the circumstances of the case, is sufficient from which to deduce the conclusion that he did acquiesce, in the absence of a showing to the contrary.

Cases are cited by counsel for appellee which seem to be in conflict with those cited in this opinion, or are distinguishable from the case at bar because of difference in facts or the character of the action.

I deem it my duty, however, to follow the decision
of the supreme court of the United States when
there is nothing in our fundamental or statute law
which renders it inapplicable.   Besides, this court
has long since determined one of the questions in-
volved in this case, in the 14th Colo. above cited,
by holding, in effect, that if the owner acquiesces
in the possession of land taken by a railroad com-
pany for right of way, or by affirmative acts, *laches,*
or other conduct, places himself and the railroad
company in such a position as to make it inequit-
able for him to insist upon a restoration of posses-
sion, he will be limited to an action for the value
of the land taken.

Referring again to the Wilson case, it was held
therein that the act of congress of March 3, 1875,
granting to railroad companies right of way through
public lands is not in the nature of an absolute grant
*in praesenti;* but is, rather, an offer to a railroad
company and takes effect as a grant, to any par-
ticular company when it has complied with the pro-
visions thereof by the location of its road and by
filing with the register a profile thereof.   While it
is not necessary to consider that question in this
case, counsel for defendant say that this holding is
contrary to a previous decision of this court, in
*D. & R. G. R. Co. v. Hanoum,* 19 Colo. 162; and also
to the decision of the supreme court of the United
States in the case of *Jamestown & N. R. R. Co. v.
Jones,* 177 U. S. 125, in which it is claimed by counsel
for the railroad company it was decided that the
grant by the act in question takes effect upon the
construction of the road.   Our attention was not
called to the Hanoum case when the Wilson case
was under consideration.   One of the authorities
cited in the Wilson case was a decision by the su-
preme court of North Dakota, which was reversed

in the 177 U. S., *supra*. The decision of the supreme court of the United States· referred to was rendered a short time previous to our decision in the Wilson case, and was not called to our attention. If, as claimed by counsel for the railroad company, the decision of the supreme court of the United States is contrary to what we held in the Wilson case in construing the act of congress mentioned, it will, of course, be our duty to follow it in the future.