LAURA BUCKWALTER V. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY.

No. 12,437. ( 67 Pac. 831.)

SYLLABUS BY THE COURT.

RAILROADS—*Right of Way—Ejectment—Estoppel.* Where a landowner has stood by and permitted a railroad company possessing the right of eminent domain to build and put in operation a line of road across his land, and thereby create large interests useful to the company and the public, without first having obtained the authority so to do by the exercise of the right of eminent domain or otherwise, he cannot maintain an action of ejectment against such company to recover the right of way occupied by it and necessary for the operation of its road.

Error from Neosho district court; L. STILLWELL, judge. Opinion filed February 8, 1902. Affirmed.

*H. P. Farrelly,* for plaintiff in error.

*A. A. Hurd,* and *O. J. Wood,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : This was an action in ejectment brought by the plaintiff in error, as plaintiff below, against the defendant in error, as defendant below, to recover a strip of land 200 feet wide across 120 acres of land owned by her in Neosho county, this strip being a portion of the right of way of a long and important railroad within and without this state, passing through many counties of this state and connecting its villages and cities. Her petition was filed September 19, 1899. This land was originally a part of what is known as "Osage ceded lands," which, previous to December 28, 1886—that being the date of plaintiff's patent—belonged to the government of the United States. In the latter part of 1883 the railway company from which the defendant derived its

title entered upon this land and constructed its line
of road across the same. The road was fully com-
pleted and this right of way occupied on January 1,
1884, and has been continuously so occupied ever
since. The plaintiff had, about July 1, 1880, settled
thereon and made valuable and lasting improvements.
Title to the land, however, could only be procured by
actual purchase and not by preemption or homestead
entry. Before the railroad company commenced the
building of its line of road it instituted proceedings
for the purpose of condemning a right of way through
this and other lands in this county. The plaintiff
claims that these proceedings were so irregular as to
be absolutely void, and that the railroad company
took no rights thereunder, one of the infirmities being
that, as she was an actual occupant of the land at the
time of these proceedings and claimed an interest
therein, she was entitled to a written notice, which
was not given. As to whether these proceedings were
void we do not determine, as we find ourselves com-
pelled to affirm the judgment of the court below re-
gardless of their sufficiency.

This is an action to put a railroad company out
of the possession and deprive it of the use of a por-
tion of its right of way, which would thus more ef-
fectually stop the running of its trains and the carrying
of passengers and freight over its line than would the
destruction of bridges or the tearing up of its track,
for such damages could be quickly repaired; but to
enable the company to resume the use of this right of
way, being once legally ejected therefrom, would re-
quire the somewhat tedious operation of the process
of condemnation under its right of eminent domain.
In the meantime not only would the vast financial in-
terests of the company itself be involved and great

money loss result to it, but, much more than this, great public inconvenience and loss would result. To estimate how great both might be, we have only to think what general consternation would come to many parts of the state and large numbers of people, were it announced that a section of a half-mile in length in any of our leading railways had suddenly sunk into an abyss, and thereby all communication over such line interrupted for a period of thirty or sixty days. Such interruption and such private loss find no adequate return to the landowner in a case where a like result would be brought about by the decree of a court in an action of ejectment, for, at the end of the time required under the law to accomplish it by a proceeding in condemnation, the railway resumes the use of its road and the landowner must accept the price of his damages. So that, should the court permit plaintiffs to recover in such cases, no benefit could come to them, while incalculable harm, inconvenience and loss would come to the railway company and the general public. Public policy stays the hand of the courts under such circumstances.

Again, we think that the equitable doctrine of estoppel prevents the plaintiff's recovery in this case. She obtained her patent to the land from the government in December, 1886. She lived on the land when the road was built across it, and has known of the operation and existence of the road ever since. She has, of necessity, known of the expenditure of vast sums of money in the building, equipment and extension of the road, and in this case has undoubtedly known of the fact that the road has passed from the hands of the original owners to those of the present proprietors ; yet there is no evidence in the record that she has ever in any way manifested her dissent or objec-

tion. This being so, she ought not now to be permitted to stop all traffic over and use of this line of road that she has stood by and without objection permitted to be constructed.

These views are abundantly sustained by the authorities. In *The Indiana, Bloomington & Western Railway Company v. Allen,* 113 Ind. 581, 15 N. E. 446, at pages 583 and 584, this doctrine is announced in the following language :

"What we affirm is, that acquiesence after public rights have intervened will prevent a landowner from destroying the line of road by wresting possession of a part of it from the company. This principle does not rest upon the right of the railroad corporation so much as upon considerations of public policy. The rights of citizens are often abridged in order that the public welfare may be promoted. Chief among the fundamental maxims of jurisprudence is that which declares 'that regard be had to the public welfare as the highest law,' and this maxim underlies the rule we have under discussion. Under our American constitutions the maxim is not pushed so far as in England, but it goes far enough with us to supply ample ground for denying one who has slept upon his rights a right to dispossess a railroad company charged with a service public in its nature, and important to the social and commercial interests of the country. Compensation he may recover, possession he cannot. To the recovery of just compensation his rights are confined. Our conclusion rests on principle and is fortified by authority. ( *Western Pennsylvania R. R. Co. v. Johnston,* 59 Pa. St. 290 ; *Smart v. Portsmouth etc. R. R. Co.,* 20 N. H. 233 ; *Harrington v. St. Paul etc. R. R. Co.,* 17 Minn. 215 ; *Harlow v. Marquette etc. R. R. Co.,* 41 Mich. 336, 2 N. W. 48 ; *Maxwell v. Bay City Bridge Co.,* 41 id. 453, 2 N. W. 639 ; *The Midland Railway Company et al. v. Smith,* 113 Ind. 233, 15 N. E. 256 ; *Evansville & Terre Haute Railroad Company et al. v. Nye,* 113 id. 223, 15 N. E. 261.)"

"Vast interests are often involved in the maintenance of railroads. They are charged with a public service, and a public character is so strongly impressed upon them that courts exercise a control over them much beyond that assumed over individual citizens. They are recognized as instruments of interstate commerce, and as such are within the control of the federal congress. *Robbins v. Shelby Taxing Dist.*, 120 U. S. 494, 7 Sup. Ct. 592, 30 L. Ed. 694; *State Freight Tax*, 15 Wall. 232, 21 L. Ed. 146; *Railroad Co. v. Maryland*, 21 id. 456, 22 L. Ed. 678.

"They may exercise rights under the power of eminent domain because of their public character. Towns spring into existence along their lines. Factories, elevators and warehouses are built upon them. The mails of the nation are carried by them. They are common carriers of freight and passengers. All these interests, and more, combine in demanding that a citizen, who has stood by until after the completion of a line of road has involved public interests, shall not be allowed to sever the line and destroy its efficiency by wresting possession of part of it from the company. The case does not stand upon the ordinary doctrine of estoppel. The great principle of public policy enters as an important factor and controls the judgment of the court. Nor is there any great hardship upon the landowner in yielding to its dominion. Ample remedies are open to him. He may demand and secure full compensation. He may do more, for he may invoke the aid of the strong arm of the courts, but, to do this with success, he must move before public interests are involved. If he remains inactive, better that he suffer, if some one must suffer, than the community. But he need not suffer, for compensation, if seasonably asked, will always be awarded him, although possession will be denied."

In *Saunders v. Railroad*, 101 Tenn. 206, 47 S. W. 155, the court used this language:

"By its charter the defendant was authorized to acquire a right of way by condemnation, gift, or pur-

chase, and to construct and operate a railroad thereon. It purchased the right of way here in question, with the rest of the road, from one claiming to have acquired title through another regularly chartered railroad company, which had taken this particular right of way and others in the line and constructed a road upon them.

"In this manner the defendant has come into the possession of the right of way through the land of the plaintiffs in good faith, and is occupying and using it for the purpose contemplated by its charter. Such being true, that possession cannot be disturbed by an action of ejectment, though the defendant's title be bad on account of the fact that the former company failed o acquire title to this right of way by condemnation or otherwise. At the most, the plaintiffs are entitled o compensation and damages only, and not to a recovery of the land.

"Conceding that what previously transpired was ineffectual to divest the plaintiffs of their titles to this strip of ground, and, consequently, that the defendants acquired no title thereto by its purchase, the result of this litigation must be the same, for, in that event the defendant, under its charter and the general law, undoubtedly had plenary power to condemn the right of way for railroad purposes, and being now in possession and actually operating the road it cannot be ejected, though it has not, in fact, condemned the land and paid for it."

In *Roberts v. Northern Pacific Railroad*, 158 U. S. 1, 15 Sup. Ct. 756, 39 L. Ed. 873, at pages 10 and 11, the court said:

"It is well settled that where a railroad company, having the power of eminent domain, has entered into actual possession of land necessary for its corporate purpose, whether with or without the consent of the owner of such lands, a subsequent vendee of the latter takes the land subject to the burthen of the railroad, and the right to payment from the railroad company, if it entered by virtue of an agreement to pay,

or to damages, if the entry was unauthorized, belongs to the owner at the time the railroad company took possession. . . . So, too, it has been frequently held that if a landowner, knowing that a railroad company has entered upon his land and is engaged in constructing its road without having complied with the statute, requiring either payment by agreement or proceedings to condemn, remains inactive and permits them to go on and expend large sums in the work, he will be estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein, and be restricted to a suit for damages. (*Lexington & Ohio Railroad v. Ormsby*, 7 Dana, 276; *Harlow v. Marquette etc. Railroad*, 41 Mich. 336, 2 N. W. 48; *Cairo & Fulton Railroad v. Turner*, 31 Ark. 494, 25 Am. Rep. 564; *Pettibone v. La Crosse & Milwaukee Railroad*, 14 Wis. 443; *Chicago & Alton Railroad v. Goodwin*, 11 Ill. 273, 53 Am. Rep. 622.)''

In addition to cases cited in opinions above, see *Central Railroad Co. v. Hetfield*, 29 N. J. L. 206; *Taylor v. The Chicago, Milwaukee & St. Paul R. Co.*, 63 Wis. 327, 24 N. W. 84; *South & North Ala. R. R. Co. v. Ala. Great Southern R. R. Co.*, 102 Ala. 236, 14 South. 747; *Provolt v. Chicago, Rock Island & Pac. R. R. Co.*, 57 Mo. 256; *Baker v. Chicago, Rock Island & Pac. R. R. Co.*, 57 id. 265; *Morgan et al. v. The Lake Shore & Michigan Southern Railway Co.*, 130 Ind. 101, 28 N. E. 548; *Chicago, B. & Q. R. Co. v. Englehart*, 57 Neb. 444, 77 N. W. 1092.

While the exact point has never before been passed upon by this court, we find that the logic of the cases heretofore decided compels to this conclusion. (*The State, ex rel., v. D. C. M. & T. Rly. Co.*, 53 Kan. 377, 36 Pac. 747, 42 Am. St. Rep. 295; *Railroad Co. v. Nyce*, 61 id. 394, 59 Pac. 1040, 48 L. R. A. 241.)

We are, however, but putting ourselves in line with the authorities and with sound reason and public pol-

icy in holding that where a landowner has stood by and permitted a railroad company possessing the right of eminent domain to build and put in operation a line of road across his land, and thereby create large interests useful to the company and the public, he cannot maintain ejectment against such company; at least, so far as its right of way necessary to the efficient discharge of its duty as a public carrier is concerned. No good would come to the landowner by his success in such action, for, as soon as it can be done under the law, his land would be taken and he would receive full compensation therefor. Why should he not be compensated at once, and the vast damage to the public, caused by the interruption of traffic, be averted? Of course, we do not wish to be understood as holding that a landowner may not successfully maintain an action for his damages sustained, at any time within the statute of limitations, or that he may not even maintain his action in ejectment at any time when these public interests have not intervened.

It may be that in this case the plaintiff never had any right of action, as she took the title to the land long after the road was built across it, and, so far as we know, with the knowledge and consent of the United States government, but we have viewed it as though she were the owner of the land at the time the road was built and, therefore, possessed whatever rights any owner would have.

The judgment of the trial court will be affirmed.

ELLIS, POLLOCK, JJ., concurring.