No. 68,982

WILLIAM P. GROSS and LAVERNE GROSS, *Appellants*, v. CAPITAL ELECTRIC LINE BUILDERS, INC., STATE OF KANSAS, RAY A. WARDS, and TIMOTHY C. HEPNER, *Appellees*.

(861 P.2d 1326)

Opinion filed October 29, 1993.

*F. Russell Peterson*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause, and *Paul Hasty, Jr.*, of the same firm, was with him on the briefs for appellants.

*David W. Hauber*, of Boddington & Brown, Chtd., of Kansas City, argued the cause and was on the brief for appellee Capital Electric Line Builders, Inc.

*David C. Wetzler*, assistant attorney general, argued the cause, and *Robert T. Stephan*, attorney general, and *John W. Campbell*, deputy attorney general, were on the brief for appellees State of Kansas, Ray A. Wards, and Timothy C. Hepner.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The plaintiffs, William and Laverne Gross, brought this action, alleging that each of the defendants trespassed and that Capital Electric Line Builders, Inc., (Capital) the State of Kansas, and Kansas Highway Patrol Officers Ray Wards and Timothy Hepner took their property without compensation and violated their civil rights. The district court entered summary judgment against the Grosses. They appealed, and the case was transferred to this court from the Court of Appeals pursuant to K.S.A. 20-3017.

William and Laverne Gross own property at 9006 W. 63rd, Shawnee Mission, Kansas. The Merriam Toyota automobile deal-

ership formerly was located there. No business operated at the location for several years prior to and including 1989.

For approximately the first six months of 1989, the Grosses were in Florida. It was during their absence or shortly after their return that Capital and the State used the parking lot.

Capital was installing lights and traffic signals as part of the I-35 reconstruction project near the parking lot. Employees of Capital, who were driving pickups for the company and personal vehicles, parked on the lot during an 8- to 12-week period. Capital admits that it trespassed on the Grosses' property.

Also in connection with the reconstruction project on I-35, other contractors, including Clarkson Construction Company, had trucks and equipment on the parking lot. Clarkson was not sued by the Grosses.

Sometime in 1989, Ray Wards and Timothy Hepner of the Motor Carrier Inspection Troop of the Kansas Highway Patrol spent approximately two hours in the Grosses' parking lot weighing trucks. They were operating a Mobile Enforcement Unit and selected the vacant parking lot as a safe location for the operation. The portable scales weighed approximately 35 pounds and were taken to the parking lot in a passenger car. Eight to ten trucks were weighed on the Grosses' property.

William Gross testified that there were cracks in the asphalted parking lot before 1989. He testified: "This was cracked (indicating). This wasn't cracked at—it was all cracked. Sure, it was cracked. Asphalt cracks." When he was asked, "Can you tell me whether the cracking in the parking lot was any different before and after you learned of any alleged trespassing?" he answered, "Oh, yes. It was severe afterwards." Gross also testified that he had no way of quantifying the damage he alleged had been done by Capital and the State.

The district court entered summary judgment against the Grosses and in favor of Capital, the State, Wards, and Hepner on the Grosses' claim of trespass, principally for the reason that no damages were shown. The district court concluded that the modern rule with respect to trespass is that damages will not be inferred as a matter of law and that the modern rule should be applied in the present case. The district court cited as authority *Maddy v. Vulcan Materials Co.*, 737 F. Supp. 1528 (D. Kan.

1990), and *Gobin v. Globe Publishing Co.*, 232 Kan. 1, 6, 649 P.2d 1239 (1982).

On appeal, the Grosses argue that the rule stated in *Hefley v. Baker*, 19 Kan. 9 (1877), which allows a trespass plaintiff who can show no actual loss to recover nominal damages, is still the law in Kansas. They distinguish *Maddy* as being a "hybrid cause of action that has come about through the combining of nuisance law and physical tangible trespass law," whereas the present case is a classic case of trespass on the premises of another. They further contend that the "modern trend" which the federal district court discussed in *Maddy* does not exist. Finally, they contend that *Gobin* does not support the proposition that the courts of this state are moving away from awards of nominal damages in intentional tort actions.

Capital concedes that as recently as the decision in *Longenecker v. Zimmerman*, 175 Kan. 719, Syl., 267 P.2d 543 (1954), this court held that "[f]rom every unauthorized invasion of the person or property of another, the law infers some damage without proof of actual injury." It urges the court, however, to abandon a rule when the reason for it no longer exists, citing *Carroll v. Kittle*, 203 Kan. 841, 848, 457 P.2d 21 (1969) (abolishing governmental immunity).

Capital suggests that the principles announced in *Gobin* and *Maddy* offer guidance, but it does not represent that they are controlling in the present case. Capital advocates that the rule of presumed damages in trespass cases should be abolished because it is not supported by public policy and is not consistent with modern tort law.

Capital reviews "modern" tort cases from other states which variously recognize or do not recognize distinctions between tangible and intangible or intentional and negligent invasions of the property of another. We find none of them to be germane except perhaps to demonstrate that the law governing trespass is not static.

Not surprisingly, the State defendants join Capital in advocating that this court abandon the rule of presumed damages in trespass cases. They urge that limited judicial resources "are best spent on real cases with real damages. Any legal fictions which support

[the Grosses'] action need to be assigned to the museum of legal history."

In *Maddy*, the federal district court granted Vulcan Materials Company's motion for summary judgment on the Maddys' trespass claim. The Maddys were neighbors of the manufacturer, and they complained of airborne pollution from Vulcan. The Maddys did not claim that their property suffered physical damage; they claimed economic damages arising from a diminution of the market value of their property and the costs of moving. 737 F. Supp. at 1539. The federal district court reviewed the traditional rules relating to trespass that required an invasion of the plaintiff's property by tangible matter. It observed:

"However, a modern trend has emerged under which airborne pollution may constitute a trespass, where the plaintiff can demonstrate physical damage to his property. *Bradley v. American Smelting & Refining Co.*, 104 Wash. 2d 677, 709 P.2d 782 (1985); *Wilson v. Interlake Steel Co.*, 32 Cal. 3d 229, 185 Cal. Rptr. 280, 649 P.2d 922 (1982); *Born v. Exxon Corp.*, 388 So. 2d 933 (Ala. 1980); *Borland v. Sanders Lead Co.*, 369 So. 2d 523 (Ala. 1979). *See* Annotation, *Recovery in Trespass for Injury to Land caused by Airborne Pollutants*, 2 A.L.R.4th 1054 (1980) (collecting cases). The modern trend departs from the traditional rule by finding that intangible invasions of the plaintiff's property may constitute a trespass. However, the modern trend also departs from traditional trespass rules by refusing to infer damage as a matter of law, thereby eliminating the right to nominal damages. The plaintiff claiming trespass must prove that the intangible invasion resulted in substantial damages to the plaintiff's land." 737 F. Supp. at 1539.

The federal district court adopted the "modern view" that an intangible invasion may constitute an actionable trespass if the property owner can show substantial physical damage to the property. 737 F. Supp. at 1540. Under this modern view, no damage to the property is inferred by an intangible invasion. There is no right, therefore, to nominal damages. The Maddys alleged an intangible invasion, but failed to allege or prove injury to their property. Even under the modern view, therefore, the Maddys could not recover in trespass. 737 F. Supp. at 1541.

*Maddy* is distinguishable from the present case, where the Grosses alleged a tangible rather than an intangible invasion of their property. The Grosses alleged that trucks were driven and parked on their property, as contrasted with the Maddys, who

had alleged that airborne gases had migrated from Vulcan's property onto their own.

In the present case, Capital convinced the district court that *Gobin* stood for the proposition that this court is moving away from the old practice of awarding nominal damages in intentional tort actions. Gobin was neither a public official nor a public figure. He alleged that the Dodge City Daily Globe published a news story about his pleading guilty to a charge of cruelty to animals which was false, libelous, and defamatory. 232 Kan. at 2.

In *Gobin*, this court was presented with a case in which the plaintiff in a libel action did not allege or prove injury to his reputation. The court decided that the courts of Kansas would not permit the recovery of damages for mental anguish in a libel or slander action without a showing of damage to reputation. 232 Kan. at 7. The court stated that "the plaintiff in an action for defamation must first offer proof of harm to reputation; any claim for mental anguish is 'parasitic,' and compensable only after damage to reputation has been established." 232 Kan. at 7. The court stated its rationale as follows:

"We conclude that in this state, damage to one's reputation is the essence and gravamen of an action for defamation. Unless injury to reputation is shown, plaintiff has not established a valid claim for defamation, by either libel or slander, under our law. It is reputation which is defamed, reputation which is injured, reputation which is protected by the laws of libel and slander." 232 Kan. at 6.

In other words, damage to reputation is "the principal injury with which a defamation action is concerned." 232 Kan. at 7.

The threshold analysis used by Kansas courts is the status of the person alleging libel. The proof required for a non-public figure does not include a showing of intent on the part of the publisher of the falsehood to harm the defamed individual, but, when the publication is the result of negligence, the proof must include a showing of actual injury to the individual.

Based upon its reading of *Gobin*, the district court imposed on the present tangible invasion the requirement of a showing of actual and substantial physical damage to the property, which the federal district court had limited to an intangible invasion. We do not concur in the district court's reading of *Gobin*. Nor

are we convinced that we should abandon the rule that infers damages without proof of actual damages in an action for trespass.

Appellants also argue, in the alternative, that, even if a showing of substantial damage is required, summary judgment should not have been entered against them because there was evidence of substantial damage. In support of their argument, appellants quote 75 Am. Jur. 2d, Trespass § 135, p. 101, as follows: "A defendant who has beneficially occupied the plaintiff's property may be liable for its fair rental value, even though the plaintiff was not hindered or obstructed in any use which he expected to make of the property."

The cases cited in the treatise for this proposition are *Balto. & Ohio Railroad Co. v. Boyd, et al.*, 67 Md. 32, 10 A. 315 (1887), and *Pearl v. P.W. Freight Co.*, 112 Ohio App. 11, 168 N.E.2d 571 (1960). In the first case, the railroad's entry into and the construction and use of railroad tracks on the Boyd property was supposed to be authorized by condemnation proceedings. When the proceedings later proved to be defective, the railroad procured condemnation through subsequent proceedings. The property owners brought suit for the repeated trespasses which occurred before condemnation was made effective. Thus, the railroad "was not a wilful wrongdoer." 67 Md. at 40. Moreover, there was no evidence that the property owners were hindered in any use of their land. 67 Md. at 41. Nonetheless, the Maryland court concluded that the property owners were "entitled to a reasonable compensation for the use of their land . . . measured by what would be a fair rental value for the ground" because it had been continuously and beneficially occupied by the railroad. 67 Md. at 41. The Maryland court cited cases from Illinois, Michigan, and Wisconsin in support of its disposition of the matter.

The facts of the Ohio case bear more similarity to the facts of the present case. There, a trucking operation parked trucks and trailers on part of Pearl's premises without permission. Pearl sought $10,200 on two theories. First he asked for damages for the unlawful use of his property, and second he alleged that the trucking company had been unjustly enriched in that amount at his expense. 112 Ohio App. 11. The trial court granted the truck-

ing company's demurrer, and the appellate court reversed. Its reasoning consisted in large measure of quotes from Am. Jur.:

"Now in trespass cases, '. . . the law infers some damage, without proof of actual injury; hence, in an action of trespass the plaintiff is always entitled to at least nominal damages, even though he was actually benefited by the act of the defendant.' (52 American Jurisprudence, 872, Section 47.) (*Murphy v. City of Fond du Lac*, 23 Wis., 365, 99 Am. Dec., 181.) Therefore, once the plaintiff in this case had alleged a trespass, it became quite unnecessary to say further that the premises had been damaged. . . .

"52 American Jurisprudence, 874, Section 49, should set the matter at rest with these words: 'What will constitute an appropriate compensation is dependent, of course, upon whether the claimant's tenure is such as to entitle him to recover for a permanent injury to the property or merely to an *injury to his use and enjoyment of it* . . . .' (Emphasis ours.) These emphasized words certainly indicate that the damages can be to the person for his being deprived of the use of his premises, and that it is not necessary to show a damage to the premises themselves.

"And '. . . the measure of damages for wrongfully depriving the plaintiff of the use of his property is the rental value or the reasonable rental value of the use of the property during the time he is deprived thereof.' (52 American Jurisprudence, 874, Section 49.) All of which hardly substantiates the view of the appellee that damages to the real property must be shown in trespass.

"Also, from 52 American Jurisprudence, 475, Section 49, there is the following: '. . . when the defendant has beneficially occupied the property, he may be held liable for its fair rental value, even though the plaintiff was not hindered or obstructed in any use which he expected to make of the property.'

"Therefore, the plaintiff is entitled to damages of some kind for the trespass committed against his property." 112 Ohio App. at 14-15.

Capital objects to the Grosses' arguing that they are entitled to rent for use of the property on the ground that they did not present that argument to the district court. Capital cites *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 307, 756 P.2d 416 (1988), for the rule that the Grosses had an affirmative duty to come forward with facts to support a claim for rent, which Capital contends they failed to do.

In this case, however, it seems that the shortcoming lies not in a failure to come forward with facts but perhaps with a failure to forcefully advocate a legal basis or theory for recovery of the rent. The rent which the Grosses had earned from the property when it was occupied by an automobile dealership was in the record, and it appears that it had been brought to the court's

attention in an attachment to Capital's suggestions in support of its motion for summary judgment. It was presented as the Grosses' answer to Capital's interrogatory seeking particulars of the damages claim:

"Defendants, in appropriating plaintiffs' property for their own use, should be liable for the reasonable rental fee for the property for the months it was appropriated by the defendants. By Lease of June 1, 1982, the real estate was leased to Prairie Pacific Corporation. That was assigned on December 20, 1985, to D & H Corporation. The monthly rental was $15,000.00, triple net."

With regard to the rental value, the Grosses concede that use of the property as a parking lot is worth less than its use as an automobile dealership. They contend that even the lesser rental value exceeds nominal damages and was sufficient to avoid the entry of summary judgment. In any event, based upon the extent of the trespass, it is an element of damages to be considered upon remand to the district court.

We next consider if the district court erred in entering summary judgment in favor of the State, Wards, and Hepner on the Grosses' claims of constitutional and civil rights violations. Our discussion of the merits on this issue needs to be prefaced by a brief procedural history. The Grosses' amended petition alleged that all the defendants trespassed. In addition, the Grosses alleged that the State, Wards, and Hepner "took the plaintiffs' property without due process of law" and "violated the civil rights of the plaintiffs." The Grosses and Capital filed motions for summary judgment. Ruling on these motions, the district court entered judgment for all the defendants, including the State, Wards, and Hepner, "principally for the reason that . . . [d]amages will not be inferred as a matter of law in trespass cases." The district court also stated that it was basing its decision on

"the reasons stated in defendant Capital's memorandum in opposition, pages 1-4, and defendant State's memorandum in opposition to the effect that plaintiffs have failed to state a claim based on the common law of trespass of Kansas upon which relief can be granted, and for the further reasons stated on pages 5-11 of the defendant State's memorandum in opposition."

At pages 5-11 of the State's memorandum in opposition, the following arguments were made: (1) Wards and Hepner were privileged to be on the Grosses' private property for a public

purpose; (2) the Kansas Tort Claims Act bars any recovery by the Grosses; (3) Kansas does not recognize actions against the State or its officials which are brought directly under the Fourteenth Amendment to the federal Constitution; and (4) the Grosses have not stated a cause of action under 42 U.S.C. § 1983 (1988) because (a) the State and its officials are not persons for purposes of the statute, and (b) a claim of trespass is not a claim of infringement of the federal Constitution and therefore will not support a § 1983 action.

On appeal, the Grosses state that "[t]he trial court did not specifically rule on these issues." Even so, the Grosses devote many pages of their briefs to the issues because, in their words, "since the court has the power as an alternative grounds to sustain the grant of summary judgment to appellees State of Kansas, Wards and Hepner, appellants will address this issue."

The Grosses argue that Wards' and Hepner's brief use of their parking lot constituted deprivation of property without just compensation in violation of the Fifth Amendment to the federal Constitution. For the proposition that such a brief, temporary use entitles them to compensation, the Grosses rely on *First Lutheran Church v. Los Angeles County*, 482 U.S. 304, 96 L. Ed. 2d 250, 107 S. Ct. 2378 (1987). The circumstances in *First Lutheran* and the present case are not comparable. In *First Lutheran*, a flood destroyed a church-owned facility for handicapped children. An interim ordinance adopted by Los Angeles County prohibited the reconstruction of any structures in the flood-protection area. The United States Supreme Court decided that the land-use regulation was a compensable taking and that the church could recover damages for the period preceding determination that the regulation constituted a taking. Thus, subsequent invalidation of the ordinance would not deprive the church of recovery of damages.

Proceeding from the premise that even a temporary use of the lot is a compensable taking under the Fifth Amendment, the Grosses argue that they must be compensated whether Wards' and Hepner's activity was statutorily authorized or not. If they were acting within statutory authority, the State owes the Grosses compensation "for the time in which their property was converted to public use." If they were acting without statutory authority,

Wards and Hepner violated the Grosses' civil rights and the Grosses have a cause of action under 42 U.S.C. § 1983. Either way, summary judgment was improper, the Grosses contend.

The State defendants characterize the Grosses' claim for compensation for a taking as "a claim directly under the Fourteenth Amendment." In *Sharp v. State*, 245 Kan. 749, 783 P.2d 343 (1989), *cert. denied* 112 L. Ed. 2d 206 (1990), this court rejected a § 1983 action and a *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971), action against the State. 42 U.S.C. § 1983 provides, in pertinent part:

"Every person who, under color of any statute . . . of any State . . . , subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

We said, in *Sharp*:

"We have held that the State of Kansas has not waived its sovereign immunity in suits seeking monetary damages under 42 U.S.C. § 1983. See *Beck v. Kansas Adult Authority*, 241 Kan. 13, 21, 735 P.2d 222 (1987). More importantly, however, the United States Supreme Court has recently decided, subsequent to the filing of this case, that a State is not a 'person' within the meaning of § 1983, and thus not subject to suit under the statute. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989). Under *Will*, no relief is available to the plaintiffs under 42 U.S.C. § 1983." 245 Kan. at 751.

In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989), the United States Supreme Court held that neither a State *nor officials of the State* while acting in their official capacities are "persons" within the meaning of § 1983.

As to the *Bivens* action, we said:

"The sixth and final issue is whether plaintiffs have stated a claim under the theory of *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388. *Bivens* is an unusual action in which the United States Supreme Court held that the plaintiff had stated a federal damage claim directly under the Fourth Amendment, although no federal statute authorized his action. Federal courts have not allowed *Bivens* actions against the states. See *Vakas v. Rodriquez*, 728 F.2d 1293 (10th Cir.), *cert. denied* 469 U.S. 981 (1984); *Colon Berrios v. Hernandez Agosto*, 716 F.2d 85 (1st Cir. 1983); and *Phelps v. Wichita Eagle-Beacon*, 632 F. Supp. 1164 (D. Kan. 1986). The United

States Supreme Court has limited nonstatutory damage actions brought under the *Bivens* theory and cautions against judicial action in expanding available remedies absent statutory mandate. See *Bush v. Lucas*, 462 U.S. 367, 76 L. Ed. 2d 648, 103 S. Ct. 2404 (1983); *Chappell v. Wallace*, 462 U.S. 296, 76 L. Ed. 2d 586, 103 S. Ct. 2362 (1983); *Vakas*, 728 F.2d at 1296. Plaintiffs seek to distinguish these cases on various grounds, but the arguments are not persuasive. We see no reason to recognize such an action against the State in this case." 245 Kan. at 754.

Wards and Hepner also argue that the constitutional violation which must be present to support a § 1983 action is missing here. They contend that the only wrongdoing alleged against them in their individual capacities is trespass. They note that in *Wise v. Bravo*, 666 F.2d 1328 (10th Cir. 1981), the circuit court held: "[A] trespass to property, negligent or intentional, is a common law tort; it does not infringe the federal constitution." 666 F.2d at 1335. Wise appealed from a district court's entry of summary judgment against him on his 42 U.S.C. § 1983 claim against Bravo, a policeman who went to Wise's apartment to retrieve and return Wise's daughter to her mother. The 10th Circuit Court of Appeals, in affirming, stated:

"Wise contends that the trial court erred by dismissing his claim for damages filed pursuant to 42 U.S.C.A. § 1983 for interference with his visitation rights.

"To state a claim for relief under § 1983, a plaintiff must demonstrate that he was deprived of a right secured by the Constitution or laws of the United States, and that any such deprivation was achieved under color of law. *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1975); *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).

"§ 1983 does not, standing alone, create any equal or civil rights of citizens; rather, it provides a remedy for rights guaranteed by the Constitution or laws of the United States. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S. Ct. 1905, 60 L. Ed. 2d 508 (1979)." 666 F.2d at 1331.

"Wise's § 1983 trespass claim is predicated on his allegation that Bravo entered his apartment without consent or process of law. Wise's deposition demonstrates that there is no merit in this allegation. In any event, a trespass to property, negligent or intentional, is a common law tort; it does not infringe the federal constitution. *Commonwealth of Pennsylvania ex rel. Feiling v. Sincavage*, 313 F. Supp. 967 (W.D. Pa. 1970); *aff'd*, 439 F.2d 1133 (3d Cir. 1971) [as applied to Section 1983 action against police for search of a home]; *Kao v. Red Lion Municipal Authority*, 381 F. Supp. 1163 (M.D. Pa. 1974)." 666 F.2d at 1335.

We conclude that relief is not available to the appellants under 42 U.S.C. § 1983 or the Fifth Amendment.

The judgment of the district court granting summary judgment is affirmed as to the § 1983 and Fifth Amendment claims and reversed as to the claim for trespass. The case is remanded for further proceedings consistent with this opinion.

ABBOTT, J., not participating.

MILLER, C.J. Retired, assigned.