*06-2079-bk*
Browning v. MCI, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: October 22, 2007                           Decided: October 14, 2008)

Docket No. 06-2079-bk

─────────────────────────────────────

IN RE: WORLDCOM, INC.,

*Debtor*,

─────────────────────────────────────

VICTOR O. BROWNING,

*Plaintiff-Appellant*,

─v.─

MCI, INC.,

*Reorganized Debtor-Appellee.*

─────────────────────────────────────

Before:      SOTOMAYOR, B.D.PARKER and HALL, *Circuit Judges*.

─────────────────────────────────────

Plaintiff-appellant Victor Browning appeals from an order of the United States District Court for the Southern District of New York (Stein, J.), affirming an order of the United States Bankruptcy Court for the Southern District of New York (Gonzalez, J.), granting the reorganized debtor-appellee MCI, Inc.'s motion to bar Browning from prosecuting Kansas state law claims for trespass and unjust enrichment against MCI, Inc. following its emergence from a Chapter 11 proceeding. We hold that, to the extent Browning's claims are viable under Kansas state law, they are pre-petition claims that were discharged by confirmation of MCI, Inc.'s plan of reorganization.

WILLIAM T. GOTFRYD (Arthur T. Susman, *on the brief*), Susman Heffner & Hurst LLP, Chicago, IL; and Barry J. Dichter, Evan R. Fleck, *on the brief*, Cadwalader, Wickersham & Taft LLP, New York, NY, *for plaintiff-appellant*.

ALFREDO R. PÉREZ (Sylvia A. Mayer, *on the brief*), Weil, Gotshal & Manges LLP, Houston, TX; and Marcia L. Goldstein and Lori R. Fife, *on the brief*, Weil, Gotshal & Manges LLP, New York, NY, *for reorganized debtor-appellee*.

SOTOMAYOR, *Circuit Judge*:

Plaintiff-appellant Victor Browning appeals from an order of the United States District Court for the Southern District of New York (Stein, J.) affirming an order of the United States Bankruptcy Court for the Southern District of New York (Gonzalez, J.) granting the reorganized debtor-appellee MCI, Inc.'s motion to bar Browning from prosecuting Kansas state law claims for trespass and unjust enrichment against MCI, Inc. following its emergence from a Chapter 11 proceeding. We hold that, to the extent Browning's claims are viable under Kansas state law, they are pre-petition claims that were discharged by confirmation of MCI, Inc.'s plan of reorganization.

**BACKGROUND**

In the late 1980s, a subsidiary of or predecessor to MCI, Inc. installed fiber-optic telecommunications cables along a railroad right of way that ran through land owned by Browning in Kansas. In 2001, Browning filed a putative class action in Kansas state court against predecessors in interest to MCI[1] on behalf of himself and similarly situated landowners,

---

[1] Browning filed suit against MCI WorldCom Network Services, Inc., MCI WorldCom Communications, Inc., and MCI WorldCom, Inc. Those entities subsequently reorganized as MCI, Inc. Because the corporate structure is not relevant to this appeal, we refer to the pre-

alleging that MCI was trespassing on his land and had been unjustly enriched by its unauthorized use of his property. Shortly thereafter, MCI filed a voluntary petition for bankruptcy, and eventually obtained an order from the bankruptcy court enjoining Browning from further prosecuting his Kansas state law claims. Browning appealed that order to the district court, and, having lost there, now appeals to us.

### A.        Browning's Putative Class Action

Browning's putative class action complaint contended that MCI was trespassing on the plaintiffs' land and had been unjustly enriched by that unlawful use. More specifically, the complaint framed, as an issue common to the purported class, "[w]hether MCI has and continues to intentionally and unlawfully trespass on the property owned by plaintiff and members of the Class by installing, maintaining and operating fiber optic cable on the property without authority." Browning further contended that MCI would be unjustly enriched if it were permitted to retain the entirety of its past or future profits from the use or sale of the fiber optic cable.

MCI removed the case to the United States District Court for the District of Kansas, which in turn transferred the action to the United States District Court for the Northern District of Oklahoma, where a similar case filed by other landowners was pending. Soon thereafter, MCI filed in the United States Bankruptcy Court for the Southern District of New York a voluntary petition for protection under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. Upon learning of the petition, the Oklahoma federal district court administratively closed Browning's case. Browning did not file a proof of claim in the bankruptcy proceeding, although it had notice of the proceeding and an opportunity to file a proof of claim. MCI's plan of

bankruptcy entities and the reorganized debtor both as "MCI."

reorganization was confirmed by the bankruptcy court in October 2003, and became effective in April 2004.

After confirmation of MCI's plan of reorganization, Browning moved the Oklahoma federal court to reopen his case. MCI responded by moving the bankruptcy court to bar Browning from further prosecuting his claims against MCI on the ground that they had been discharged by the confirmation of the plan. In opposition, Browning argued that his claims were not discharged because they arose from actions that continued after confirmation of the plan.

**B.     Bankruptcy Court Decision**

The bankruptcy court granted MCI's motion to bar Browning from further prosecuting his claims against MCI. *In re WorldCom, Inc.*, 320 B.R. 772, 784 (Bankr. S.D.N.Y. 2005). In reaching this decision, the bankruptcy court observed that Browning's continuing trespass claim was not based on the intrusion of the fiber optic cables themselves, but was based instead on the theory that each light pulse sent through the cables constituted a new trespass on his property. *Id.* at 777. Accordingly, the bankruptcy court did not decide whether the cable constituted a permanent or continuing trespass to Browning's land. *Id.* at 776 n.4.

With respect to whether the light pulses could give rise to an action for trespass, the bankruptcy court first noted that the "traditional" view of trespass law extended only to tangible invasions and relegated intangible invasions to nuisance law. *Id.* at 776. It further noted that some states have adopted a more relaxed "modern" view, under which certain intangible invasions were cognizable as trespasses. *Id.* But, the bankruptcy court observed, those states require the plaintiff to establish that the intangible invasion caused damages to land, whereas damages are presumed in the case of a tangible trespass. *Id.* at 776–77. After surveying the laws

4

of various other states and two relevant decisions of the United States District Court for the District of Kansas, the bankruptcy court predicted that Kansas law would recognize intangible trespass claims in cases in which the plaintiff could establish that the invasion had caused damage to the *res*. *Id.* at 779–82 (discussing *City of Shawnee v. AT&T Corp.*, 910 F. Supp. 1546 (D. Kan. 1995) and *Maddy v. Vulcan Materials Co.*, 737 F. Supp. 1528 (D. Kan. 1990)). The court then concluded that Browning's allegations regarding the light pulses did not state a claim for trespass under Kansas law because he did not allege that the intangible light pulses had caused any damage to his land. *Id* at 782.

## C. District Court Decision

Browning timely appealed the bankruptcy court's decision to the district court, pursuant to 28 U.S.C. § 158(a). On appeal, Browning argued, *inter alia*, that: (1) the bankruptcy court improperly applied Kansas trespass law; (2) the bankruptcy court misconstrued the factual and legal bases for the alleged trespass; (3) the bankruptcy court's application of Kansas trespass law conflicted with Kansas public policy; and (4) the bankruptcy court failed to address Browning's unjust enrichment claim. In opposition, MCI argued, *inter alia*, that all of Browning's claims had been extinguished by the confirmation of the Plan and, in any event, the bankruptcy judge properly determined that Browning could not maintain an action for a continuing trespass.

The district court affirmed the decision of the bankruptcy court. *In re Worldcom, Inc.*, 339 B.R. 836, 845 (S.D.N.Y. 2006). Noting that "the precise configuration of appellants' claims . . . is unclear," the district court analyzed Browning's trespass claims with respect both to the fiber optic cables and to the light pulses coursing through them. *Id.* at 841. The court concluded that neither the cables nor the light pulses would give rise to a valid post-confirmation claim of

5

trespass under Kansas law, and that any valid pre-petition claim had been discharged by confirmation of MCI's plan of reorganization. *Id.* at 842–44.

Like the bankruptcy court, the district court found that some courts, including those in Kansas, have departed from the traditional view that intangible intrusions could not give rise to trespass and have recognized trespasses from intangible intrusions where the intrusion has caused damage to the plaintiff's property. *Id.* at 841. The district court then predicted, as had the bankruptcy court, that Kansas law would require a plaintiff asserting a claim of intangible trespass to establish that the alleged invasion had caused damage to the *res*. *Id.* at 841–42. The district court concluded that, because the light pulses were intangible trespasses, and because Browning had failed to show damages, Browning could not "establish a trespass claim stemming from those pulses; any valid trespass claim would have to involve the tangible cables themselves." *Id.* at 842.

With respect to the cables, the district court drew upon the Kansas courts' distinction between continuing and permanent nuisances, pursuant to which a nuisance is deemed permanent when the structure giving rise to it is "not easily abatable." *Id.* at 843. The court noted that, consistent with that distinction, the United States District Court for the District of Kansas had previously held that "fiber optic cables . . . constituted permanent trespasses because they are not easily removable." *Id.* (citing *City of Shawnee*, 910 F. Supp. at 1561). Based on those principles, and "the absence of Kansas case law suggesting otherwise," the district court determined that the cables on Browning's land were permanent in nature, and that, accordingly, any claim arising from the presence of the cables was a pre-petition claim that was discharged by the confirmation of MCI's plan of reorganization. *Id.* at 843–44.

Finally, the district court determined that Browning had waived his unjust enrichment claim by failing to argue it to the bankruptcy court in response to MCI's motion. Irrespective of waiver, the district court held, any unjust enrichment claim with respect to the cables had been discharged and any such claim with respect to the light pulses was without merit. *Id.* at 844–45.

Browning timely appealed the district court's judgment to this Court.

## DISCUSSION

When a district court acts as an appellate court in a bankruptcy case, its decisions are subject to plenary review. *Smith v. Geltzer (In re Smith)*, 507 F.3d 64, 71 (2d Cir. 2007). We therefore must review the bankruptcy court's findings of fact and conclusions of law independently. *Id.* We will accept the bankruptcy court's findings of fact unless they are clearly erroneous and review its conclusions of law *de novo*. *Id.*

### I. Bankruptcy Discharge

Under the Bankruptcy Code, confirmation of a plan of reorganization "discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A). A "debt" is defined to mean "liability on a claim," and, in turn, a "claim" is defined to include any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A), (12). Congress gave the term "claim" "the broadest available definition" in the Bankruptcy Code. *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302 (2003) (quoting *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)). Thus, this Court has explained that "a 'claim' should be deemed to exist whenever, in the absence of bankruptcy, a particular claimant has the right to reach the debtor's assets." *In re*

7

*Chateaugay Corp.*, 944 F.2d 997, 1003 (2d Cir. 1991).

The bankruptcy court's order confirming MCI's plan of reorganization specifically provides that:

> [e]xcept as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors . . . shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims . . . shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim . . . based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim . . . .

*In re WorldCom, Inc.*, Ch. 11 Case No. 02-13533, ¶ 16 (Bankr. S.D.N.Y. Oct. 31, 2003) (order confirming modified second amended joint plan of reorganization).  Browning acknowledges that confirmation of MCI's plan of reorganization discharged all "claims" against MCI that predated the filing of MCI's Chapter 11 petition.  For the reasons explained below, however, he contends that MCI's alleged wrongful actions "straddle" its bankruptcy proceedings, and that he is entitled therefore, both as a matter of Kansas state law and under the Bankruptcy Code, to recover for MCI's post-confirmation use of the fiber optic cables on his property.

## II.     Browning's Claims Have Been Discharged

### A.     Trespass

#### 1.     The Light Pulses

We begin with Browning's claim that each new light pulse transmitted through the cables on his property gives rise to a new action for trespass. We agree with both lower courts that this claim would not be cognizable under Kansas law in the absence of an allegation that the light had caused damage to Browning's land.

8

Under Kansas law, a trespass is accomplished by a person "who intentionally and without a consensual or other privilege . . . enters land in possession of another or any part thereof or causes a thing or third person so to do." *Riddle Quarries, Inc. v. Thompson*, 177 Kan. 307, 311, 279 P.2d 266, 269 (Kan. 1955) (*citing* Restatement (First) of Torts § 158 (1934)). Traditionally, trespass law in Kansas and elsewhere recognized only tangible invasions of property. *See, e.g., id.* at 311, 279 P.2d at 270 (recognizing trespass from unauthorized placement of limestone on right of way); Restatement (Second) of Torts § 158 (1965) (defining trespass as unauthorized entry by "thing" or person); W. Page Keeton et al., *Prosser and Keeton on Torts* § 13 at 70 (5th ed. 1984) (same). When such a tangible invasion occurred, the element of damages was presumed. *Longenecker v. Zimmerman*, 175 Kan. 719, 721, 267 P.2d 543, 545 (Kan. 1954).

As the bankruptcy and district courts noted, however, some courts have adopted a "modern" view of trespass that recognizes intangible invasions. *See, e.g., Public Service Co. of Colo. v. Van Wyk*, 27 P.3d 377, 390 (Colo. 2001) ("[W]e now hold that, in Colorado, an intangible intrusion may give rise to claim for trespass. . . ."); *Bradley v. Am. Smelting & Refining Co.*, 104 Wash. 2d 677, 686–88, 709 P.2d 782, 788–89 (Wash. 1985) (holding deposit of microscopic particulates gives rise to action for trespass); *Borland v. Sanders Lead Co.*, 369 So.2d 523, 529 (Ala. 1979) ("Whether an invasion of a property interest is a trespass or a nuisance does not depend upon whether the intruding agent is 'tangible' or 'intangible.'"). But those courts generally have required plaintiffs to establish that the intangible invasion caused damage to the *res. See, e.g., Van Wyk*, 27 P.3d at 390("[A]n intangible intrusion may give rise to claim for trespass . . . only if an aggrieved party is able to prove physical damage to the property by such intangible intrusion."); *Bradley*, 104 Wash. 2d at 692, 709 P.2d at 791 ("[T]he plaintiff

9

[alleging intangible trespass] who cannot show that actual and substantial damages have been suffered should be subject to dismissal of his cause upon a motion for summary judgment."); *Borland*, 369 So.2d at 529 ("Under the modern theory of trespass . . . a plaintiff must show . . . substantial damages to the *res*.").

In this case, Browning effectively seeks to apply the modern view to recover for an intangible trespass without showing that his land was damaged by the alleged invasion. But Browning has identified no court of the state of Kansas that has applied the modern view without requiring proof of physical damages to the *res*, and we have not found any such decision. We confidently predict that the Kansas Supreme Court, if it were to recognize intangible trespasses at all, would apply the modern view and would require a plaintiff asserting a claim of intangible trespass to establish that the invasion had caused damage to the *res*.[2] Under this approach, Browning's claim of trespass by light pulses would fail because he has not alleged any resulting damage to his land.

Our prediction of Kansas law is informed by a Kansas Supreme Court decision issued shortly after the parties argued this appeal. Specifically, in *Smith v. Kansas Gas Service Co.*, the Kansas Supreme Court stated in dicta that a plaintiff "must prove substantial damages to the land to recover for [an] intangible invasion." 285 Kan. 33, 47, 169 P.3d 1052, 1061 (Kan. 2007) (citing *Gross v. Capital Elec. Line Builders, Inc.*, 253 Kan. 798, 801, 861 P.2d 1326, 1329 (Kan.

---

[2]    A separate panel of this Court previously denied Browning's motion to certify to the Kansas Supreme Court two questions regarding Kansas law. *Browning v. MCI, Inc.*, No. 06-2079-bk (2d Cir. Jul. 21, 2006). We are similarly convinced that this case does not present "any of the exceptional circumstances that would justify using the certification procedure," *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005), and are confident in our prediction of how the Kansas courts would rule on the relevant questions of Kansas state law.

1993)).[3]  Although dicta, this is the Kansas Supreme Court's most direct statement regarding claims of intangible trespass, and it strongly suggests that Kansas would require plaintiffs asserting such claims to establish damage to the land.[4]

Moreover, this result is entirely consistent with the policies underlying the tort of trespass.  Trespass law protects a person's exclusive possessory interest in property.  Keeton et al., *supra*, § 13, at 67.  That interest is necessarily infringed when a person places a tangible thing upon the land without permission or privilege.  *Cf. Adams v. Arkansas City*, 188 Kan. 391, 401–02, 362 P.2d 829, 838 (Kan. 1961) (distinguishing trespass from nuisance on basis that

---

[3]  *Gross* involved a claim of trespass arising from the unauthorized use of the plaintiffs' parking lot by the defendants' employees.  253 Kan. at 799, 861 P.2d at 1328.  The trial court had relied on the federal district court decision in *Maddy* for the proposition that the Kansas courts were moving away from the traditional rule of imputing nominal damages in trespass claims, and had required the plaintiffs to allege damages to proceed with their trespass claims.  *Id.* at 799–800, 861 P.2d at 1328.  The Kansas Supreme Court reversed, distinguishing *Maddy* on the ground that it addressed claims of intangible trespass, whereas the Grosses had clearly alleged tangible invasions.  *Id.* at 801, 809, 861 P.2d at 1329, 1334.

Accordingly, the holding of *Gross* is limited to tangible, rather than intangible, trespass claims.  But in *Smith*, the Kansas Supreme Court nevertheless cited *Gross* for the proposition that a "plaintiff must prove substantial damages to the land to recover for intangible invasion," and predicted on that basis that claims relating to a leak of natural gas would "likely" fail if pursued on a trespass theory under Kansas law.  285 Kan. at 47, 169 P.3d at 1061.  Our prediction of Kansas law thus is based upon the Kansas Supreme Court's own prediction, in this dicta in *Smith*.

[4] It is true that the United States District Court for the District of Kansas arrived at a different conclusion in *City of Shawnee*, and held that Kansas law would recognize a claim of intangible trespass without requiring the plaintiff to allege damage to the land.  910 F. Supp. at 1561–62.  We are not bound by that federal court's determination of Kansas state law, however, *see Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007) ("We owe no deference to the district court's interpretation of New York law."), and accord the determination particularly little weight because the issue was not fully briefed by the parties to that case.  *See City of Shawnee*, 910 F. Supp. at 1561 (noting AT&T did not brief issue of intangible trespass).  Moreover, the determination is at odds with *Maddy*, in which a different judge of the same federal district court held that Kansas law would require proof of "actual and substantial damage" to land in an action for intangible trespass.  737 F. Supp. at 1540.

trespassory invasion necessarily interferes with property interest whereas nuisance requires proof of injury). Accordingly, there is no need for a plaintiff alleging a tangible invasion to otherwise prove damages. By contrast, invasions by intangibles such as light or sound will not always interfere with the person's rights of possession—unless there is substantial damage to the *res*. *See Bradley v. Am. Smelting & Refining Co.*, 635 F. Supp. 1154, 1156–57 (W.D. Wash. 1986) ("Injury to the *res* directly implicates the right to exclusive possession protected by the law of trespass."). Requiring plaintiffs to allege damage to the *res* as part of intangible trespass claims, rather than presuming damage by the alleged invasion, therefore, preserves the tort's focus on invasions that interfere with rights of possession and avoids unnecessary expansion of the law of trespass.[5]

Accordingly, we conclude that if Kansas were to recognize Browning's claim of trespass by the light pulses transmitted through the fiber optic cables buried on his land, it would require Browning to allege that the invasion had caused substantial damage to his land. Because he has failed to allege any such damage, this claim fails irrespective of the bankruptcy discharge.

### 2. The Cables

With respect to the presence of the cables on Browning's land, any claim of trespass existed prior to the filing of MCI's bankruptcy petition and was discharged by confirmation of its

---

[5] Browning argues that distinguishing between tangible and intangible invasions is untenable because many purported "intangible" invasions are in fact accomplished by small particles. Even light, he argues, can be described as both energy and particle. However accurate that may be as a matter of physics, it does not represent the law of torts, which has long distinguished between tangible and intangible invasions and has deemed invasions by light to be the latter. *See, e.g.,* Keeton et al., *supra*, § 13, at 71 ("Thus, it is not a trespass to project light, noise, or vibrations across or onto the land of another."). We are confident that the Kansas Supreme Court would have no difficulty distinguishing an invasion by pulses of light from an invasion by a tangible thing such as a person or other object.

plan of reorganization.[6]

Browning and MCI agree that the cables were installed sometime in the late 1980s. Accordingly, if the installation was not consensual or privileged, a cause of action for MCI's alleged trespass to install the cables accrued then.  *See Riddle Quarries*, 177 Kan. at 311, 279 P.2d at 269–70 (stating elements of trespass under Kansas law).  Because such a cause of action would have predated the filing of MCI's bankruptcy petition, it would have been discharged by confirmation of MCI's plan of reorganization.

Browning argues, however, that the continuing presence of the cables on his land constitutes a "continuing" tort, for which a new cause of action accrues daily.  The Kansas Supreme Court has in fact recognized the theory of continuing trespass.  *See United Proteins, Inc. v. Farmland Indus., Inc.*, 259 Kan. 725, 728, 915 P.2d 80, 83 (Kan. 1996) (suggesting leak of chemicals into aquifer, even though occurring outside limitations period, could give rise to viable continuing trespass claim when defendant allowed invasion to continue during limitations period) (*citing* Restatement (Second) of Torts § 161; Keeton, et al., *supra,* § 13, at 83).  Some "continuing trespasses" arise from series of discrete invasions from a common source, such as recurrent flooding from a drainage system.  *See Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 477, 15 P.3d 338, 346 (Kan. 2000) (allowing suit for recent flood damages because the

---

[6]    We note that Browning may have waived this claim by failing to present it to the bankruptcy court.  In his opposition to MCI's motion, Browning assured the bankruptcy court that the "gist" of his post-petition claims against MCI was "the use of the fiber to transmit signal pulses (as opposed to the original installation and presence of the below ground facilities)."  The bankruptcy court reasonably interpreted this to mean that Browning's trespass action related to the alleged invasion by intangible light pulses rather than the cables' continuing existence on his land.  *In re Worldcom, Inc.*, 320 B.R. at 776.  Nevertheless, we decline to decide this claim on waiver because it is clear that it is a pre-petition claim that was discharged by confirmation of MCI's Plan.

13

injury was temporary and recurring rather than permanent and time-barred). Others arise from the continuation of a single invasion, such as when the defendant places a thing on the plaintiff's land and fails to remove it. *See W. Union Tel. Co. v. Moyle*, 51 Kan. 203, 203, 32 P. 895, 896 (Kan. 1893) (allowing recovery of damages inflicted within limitations period by wire first installed on plaintiff's property prior to limitations period); *see also* Restatement (Second) of Torts § 158 cmt. m ("An unprivileged remaining on land in another's possession is a continuing trespass for the entire time during which the actor wrongfully remains."). The continuing presence of MCI's fiber optic cables on Browning's land therefore *could* give rise to a claim of continuing trespass, assuming that the original installation of the cables was tortious (which MCI denies).

Nevertheless, even assuming that MCI committed a continuing trespass, any such claim was discharged by confirmation of MCI's plan of reorganization, due to the expansive scope of the Bankruptcy Code's definition of "claim" and Browning's failure to allege any relevant post-confirmation conduct or unforeseeable damages. It is well-established under Kansas law that a plaintiff asserting a claim of continuing trespass can elect to bring an action for all past, present, and future damages inflicted thereby. *McDaniel v. City of Cherryvale*, 91 Kan. 40, 40, 136 P. 899, 900–01 (Kan. 1913); *Wichita & W. R. Co. v. Fechheimer*, 36 Kan. 45, 45, 12 P. 362, 364 (Kan. 1886); *see also* Restatement (Second) of Torts § 930 (allowing single action for past and future damages by continuing trespass). Indeed, in analogous cases involving trespass claims against public utilities, the Kansas courts have held that public policy prohibits a plaintiff from sitting on his or her rights while the defendant creates large interests useful to the company and the public. *See Taylor Inv. Co. v. Kansas City Power & Light Co.*, 182 Kan. 511, 523–24, 322

14

P.2d 817, 827–28 (Kan. 1958) (holding plaintiff could not pursue ejectment or damages for alleged continuing trespass by power company); *see also Buckwalter v. Atchison, T. & S.F. Ry. Co.*, 64 Kan. 403, 403, 67 P. 831, 833 (Kan. 1902) (holding plaintiff "must move before public interests are involved" to bring suit for ejectment, but allowing single action for past, present, and future damages). Whether Browning would have been required under Kansas law to bring a pre-petition trespass claim for the cables, or merely would have been entitled to bring such an action at his election is immaterial: in either case, because Kansas law would have permitted recovery for his future damages, he would have had a pre-petition "claim" against MCI. 11 U.S.C. § 101(5)(A) (defining "claim"); *In re Chateaugay Corp.*, 944 F.2d at 1003 ("[A] 'claim' should be deemed to exist whenever, in the absence of bankruptcy, a particular claimant has the right to reach the debtor's assets."). Thus, if Browning had a viable claim for continuing trespass under Kansas law, it was discharged by confirmation of MCI's plan of reorganization.[7]

Any seeming injustice from this result stems from Browning's own failure to file a proof

---

[7] Both the bankruptcy court and the district court characterized claims relating to the physical cables as arising from a "permanent" rather than a "continuing" trespass. *In re Worldcom, Inc.*, 339 B.R. at 843–44; *In re Worldcom, Inc.*, 320 B.R. at 776 n.4. We do not frame our inquiry in those terms because it is not clear that those categories are necessarily mutually exclusive. *See Fechheimer*, 36 Kan. at 45, 12 P. at 364 (noting plaintiff could elect to sue for continuing injuries from permanent construction on her property); Restatement (Second) of Torts § 161 ("A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it."); *id.* § 158 cmt. m (distinguishing continuing trespass from "a series of separate trespasses"); Black's Law Dictionary 1541 (8th ed. 2004) (defining "continuing trespass" as "a permanent invasion"). Nevertheless, we agree with the bankruptcy and district courts that any claim for trespass arising from the cables themselves arose pre-petition, because all of the necessary elements were complete then and Browning has not alleged any relevant post-petition conduct (other than MCI's failure to remedy the trespass by removing the cables, which was foreseeable). Moreover, Browning has not alleged any additional post-petition harm, and seeks only the nominal damages that he sought pre-petition.

15

of claim in the bankruptcy proceeding, and from Congress's policy decision to afford reorganizing debtors a fresh start at the possible expense of creditor interests. This case is unlike those upon which Browning relies in which courts have rejected defendants' efforts to insulate themselves from post-confirmation liability by linking the alleged violations to pre-petition conduct. For instance, in *O'Loghlin v. County of Orange*, the plaintiff brought an action against her municipal employer under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 ("the ADA"), alleging violations of the ADA both before and after the discharge of the employer's debts pursuant to a bankruptcy plan of reorganization. 229 F.3d 871, 873 (9th Cir. 2000). The district court determined that all of the plaintiff's claims were barred by the reorganization, because the post-discharge violations arose from a continuing course of conduct for which the plaintiff could have sued prior to the discharge. *Id.* at 874. Although the Ninth Circuit agreed that the plaintiff's claims relating to pre-discharge violations of the ADA were barred by the bankruptcy discharge, it reversed the district court with respect to the post-discharge claims on the ground that those claims arose from additional "illegal conduct occurring after [the] discharge." *Id.* at 875. Here, any liability for the continuing trespass of the fiber optic cables would be based solely on MCI's initial installation of the cables, long before the filing of its bankruptcy petition, and its subsequent failure to remove the cables. Browning does not allege any relevant post-confirmation acts by MCI, or that he has suffered any additional unforeseen damages from the continued presence of the cables. Indeed, Browning seeks only the same nominal damages that he sought pre-petition.

### B. Unjust Enrichment

In addition to his common law trespass claims, Browning asserted a claim of unjust

16

enrichment, arguing that MCI should be disgorged of the profits it has earned from its unauthorized use of his land. The district court found that Browning had waived this claim by failing to argue it to the bankruptcy court, *In re Worldcom, Inc.* 339 B.R. at 844–45, and Browning has not presented any reason for us to doubt that determination. Accordingly, we find the claim waived.[8]

In any event, Browning's unjust enrichment claim also is without merit. The basic elements for an unjust enrichment claim under Kansas law are: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 259 Kan. 166, 177, 910 P.2d 839, 847 (Kan. 1996) (quotation marks ommitted); *accord J.W. Thompson Co. v. Welles Prods. Corp.*, 243 Kan. 503, 512, 758 P.2d 738, 745 (Kan. 1988). However, in the absence of privity between the parties, Kansas courts also require the plaintiff to demonstrate some "detriment" induced by the defendant. *See Haz-Mat*, 259 Kan. at 178, 910 P.2d at 847; *J.W. Thomson Co.*, 243 Kan. at 512, 758 P.2d at 745. Because there is no privity between the parties, and because Browning did not allege any induced detriment, we agree with the district court that Browning's claim of unjust enrichment would fail under Kansas state law. This claim therefore is barred irrespective of the

_____

[8] We also deem waived Browning's related claim under K.S.A § 58-2520, which provides that "[t]he occupant without special contract, of any lands, shall be liable for the rent to any person entitled thereto." Browning did not assert this claim in his class action petition, and did not identify this statute when responding to MCI's motion in the bankruptcy court to enjoin Browning from further prosecuting "all claims against MCI." *See Schmidt v. Polish People's Republic*, 742 F.2d 67, 70 (2d Cir. 1984) ("A party generally may not raise claims on appeal which it failed to raise before the trial court.").

17

bankruptcy discharge.

## CONCLUSION

For the reasons discussed, we AFFIRM the order of the district court affirming the order of the bankruptcy court enjoining Browning from further prosecuting his Kansas state law claims against MCI.