NOT DESIGNATED FOR PUBLICATION

No. 121,879

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RINGNECK FARMS LLC,
*Appellant*,

v.

DR. BRADLEY STEUWE; FRIED ENTERPRISES L.P.; C & W RANCH LTD.; JOEL WIMER; and
R.J. FENCING L.L.C.,
*Appellees*.


MEMORANDUM OPINION

Appeal from Ottawa District Court; PAUL J. HICKMAN, judge. Opinion filed September 4, 2020. Affirmed in part, reversed in part, and remanded with directions.

*Troy D. Renkemeyer*, of Renkemeyer Law Firm LP, of Overland Park, for appellant.

*Richard P. Billings* and *Craig C. Blumreich*, of Larson & Blumreich Chtd., of Topeka, for appellees Dr. Bradley Steuwe and Fried Enterprises L.P.

*Cynthia J. Sheppeard*, of Goodell, Stratton, Edmonds & Palmer LLP, of Topeka, for appellees C & W Ranch and Joel Wimer.

*Michael L. Hughes*, of McCormick, Gordon Bloskey & Poirier PA, of Overland Park, for appellee Hurtig Farms LLC.


Before ARNOLD-BURGER, C.J., BRUNS and SCHROEDER, JJ.


PER CURIAM: Ringneck Farms LLC owned land (Ringneck Property) which contained a row of hedge trees. The owners of the neighboring property (Fried Property),

Fried Enterprises L.P., or those in its employ, allegedly cut down Ringneck's trees without permission. Ringneck sued for negligence, gross negligence, conversion, and trespass.

Ringneck's expert witnesses were prepared to testify that the replacement cost of the trees was over one million dollars. The owners and employees of the Fried Property filed a motion in limine to bar Ringneck from presenting evidence regarding the replacement value of the trees, arguing that under Kansas law the replacement value was not a proper measure of damages. The district court agreed and granted the motion in limine.

Subsequently, the owners, lessees, and contractors of the Fried Property filed a motion for summary judgment arguing that given Ringneck's reliance on the replacement value of the trees for damages Ringneck was unable to prove damages. The district court agreed and granted the motion for summary judgment. Ringneck appeals and argues that it had alternative ways to prove damages including a more reasonable replacement value based on the cost of replacing the trees with saplings that would be admissible. We agree and reverse the district court's order granting summary judgment to the owners, lessees, and contractors of the Fried Property.

FACTUAL AND PROCEDURAL HISTORY

Ringneck Farms LLC owns real property (Ringneck Property) which is used for hunting. Fried Enterprises L.P. owns property (Fried Property) adjacent to the Ringneck Property. The Ringneck Property had a row of hedge trees that was approximately 20 yards wide and 300 yards long that ran adjacent to the Fried Property. The trees were around 70 years old at the time relevant to this case.

Joel Wimer, who was leasing the Fried Property, contacted Ringneck and requested permission to cut down the hedgerow and install a fence. Ringneck instructed Wimer not to cut down any trees on the Ringneck Property and not to disturb the vegetation.

Wimer entered the Ringneck Property, cut down the hedgerow on what Ringneck alleged was its property, and installed a fence. According to Ringneck, around 156 mature trees were destroyed. Ringneck brought suit against the owners, lessees, and contractors of the Fried Property (Defendants) alleging negligence, gross negligence, conversion, and trespass. Ringneck claimed that loss of the trees diminished the value of the Ringneck Property for hunting. It claims that the owners bought the property for hunting.

The court set a discovery deadline of April 19, 2019. The court also set October 12, 2018, as the deadline for Ringneck to designate expert witnesses.

On February 28, 2019, the Defendants filed a joint motion in limine seeking to bar Ringneck from presenting evidence about the replacement value of the trees. The Defendants' argument essentially boiled down to an assertion that "Kansas does not recognize replacement value as a proper measure of damages for the destruction of trees." The Defendants specifically referred to two of Ringneck's experts, Paul Weaver and Bill Nolde. The Defendants anticipated that Weaver and Nolde would testify that the replacement cost of the trees was $1,092,361. The district court granted Defendants' motion and prohibited Ringneck from presenting "any question, testimony, argument, inference, statement, document, or exhibit referring to the replacement cost of the Hedge Row."

3

In May 2019, the Defendants filed a motion for summary judgment. The Defendants argued that, because of the district court's order in limine, Ringneck could not prove damages existed and therefore Ringneck had no claim. The Defendants pointed to Ringneck's answer in an interrogatory asking about the value of the property before and after the trees were removed. Ringneck responded that the value was the subject of expert testimony. And because Ringneck had no expert witnesses available to testify as to the value of the property, his claim must fail.

The district court granted the Defendants' motion for summary judgment. In its written order, the district court found that Ringneck did not know the fair value of the property before and after the trees were removed. Nor did Ringneck designate an expert to testify about the value of the property. This was fatal to his claim.

The district court reasoned that Ringneck was required to prove damages to establish his case at trial. Ringneck was unable to prove damages because the district court had ruled earlier that the proper measure of damages was the value of the property before and after the trees were removed. In reaching its conclusion, the district court pointed to the Defendants' motion for summary judgment, where the Defendants' statement of uncontroverted facts asserted:

"1. Plaintiff does not know the fair market value of the property before and after the removal of trees. Exhibit 1, Ringneck Farms, LLC Response to Defendants' First Set of Interrogatories Propounded to Plaintiff Ringneck Farms, LLC #5."

In its response to the motion for summary judgment, Ringneck replied:

"1. Defendants' wrongful removal of the trees in question resulted in a reduction of quality level of hunting on the land, and therefore was damaged. Plaintiff Affidavit, Ex. A."

4

The district court found that Ringneck's response failed to controvert the Defendants' statement of facts and deemed all of Defendants' statements of fact to be uncontroverted. Because Ringneck failed to include "any alternative evidence with its Response" and failed to provide "any admissible evidence as to the value of its claimed damages" the district court granted the Defendants' motion for summary judgment.

ANALYSIS

This case is about damages and whether Ringneck has enough evidence of damages to present its case to a jury. The district court found it did not and dismissed its claims. The court first granted a pretrial motion in limine preventing Ringneck from presenting evidence of the value of the mature trees that were removed from its property. It then granted summary judgment to Defendants, finding Ringneck had presented no admissible evidence of damages. We will examine each issue in turn, but first we address Defendants' claim that Ringneck has abandoned all but its negligence claims.

*Ringneck has not abandoned its conversion and trespass claims.*

Defendants argue on appeal that Ringneck has abandoned any argument concerning its claims for conversion and trespass—both as they relate to its motion in limine and its summary judgment motion. We find such argument disingenuous. In fact, it was the Defendants who failed to specifically address the conversion and trespass claims in their motions before the district court. The Defendants' motions and the rulings thereon only dealt with the negligence claims. As such, it appears that it is the Defendants that seek to raise the failure of Ringneck to present sufficient evidence on its conversion and trespass claims for the first time on appeal.

In their motion in limine, and in their reply brief to Ringneck's response to the motion in limine, Defendants listed primarily negligence cases to support their motion,

5

with the exception of a few that were referring to a particular statute regarding the removal of trees that is no longer in effect in Kansas. See *Nordgren v. Southwestern Bell Telephone Co.*, 125 Kan. 33, 35, 262 P. 577 (1928). The Defendants failed to even use the terms conversion or trespass or to cite any cases applying the same rule in conversion or trespass cases or to point out any different measures in such cases or why the same measure as used in negligence cases should apply. Likewise, the district court's ruling relied solely on *Evenson v. Lilley*, 295 Kan. 43, 48-49, 282 P.3d 610 (2012), a case that dealt only with a negligence claim.

In their summary judgment motion, the Defendants did not specify any particular tort but seemed to include all "causes of action." However, the only example they gave in their memorandum in support and their reply was to a negligence claim. And although they alert this court to the separate rule related to trespass claims—that no actual damages need be proved—they failed to advise the district court of that key difference. Either they intentionally failed to provide contra evidence to the district court, or they were only addressing the negligence claims. And it was those negligence claims to which Ringneck responded. Likewise, the district court's order granting summary judgment for the Defendants, only refers to the negligence claim. Further evidence that the parties were only discussing the negligence claims is the court's statement that the value of damages are a necessary element of each claim. That is not correct. As conceded by the Defendants, a trespass claim can result in nominal damages when no actual damages are proven.

Accordingly, under these circumstances, we find no abandonment by Ringneck of its trespass and conversion claims. We find the parties and the court only addressed the negligence claims and the summary judgment order is deemed to only relate to the negligence claims.

*The district court did not err in granting the motion in limine.*

A motion in limine is "a proper method of excluding evidence not at issue in a trial." *U.S.D. No. 464 v. Porter*, 234 Kan. 690, 694, 676 P.2d 84 (1984). It is "used to invoke a trial judge's inherent power to control proceedings, to exclude inadmissible evidence, and to prevent undue prejudice." *State v. Smith*, 46 Kan. App. 2d 939, 943, 268 P.3d 1206 (2011).

A district court's decision on a motion in limine involves a two-prong test. To grant the motion, the court must determine that (1) the material or evidence in question will be inadmissible at trial; and (2) a pretrial ruling is justified, as opposed to a ruling during trial, because (a) the mere offer or mention of the evidence during trial may cause unfair prejudice, confuse the issues, or mislead the jury; (b) the consideration of the issue during trial might unduly interrupt and delay the trial; or (c) a ruling in advance of trial may limit issues and save the parties time, effort, and cost in trial preparation. *State v. Shadden*, 290 Kan. 803, 815-16, 235 P.3d 436 (2010).

The appellate review of a district court's decision granting a motion in limine is a multistep evidentiary analysis. To determine whether the district court was correct in finding that the evidence would be inadmissible at trial we first examine whether the evidence is relevant. Evidence is relevant if it is both probative and material. We determine whether evidence is probative under an abuse of discretion standard and whether it is material under a de novo standard. Next, we examine de novo what rules of evidence or other legal principles apply. And third we apply the applicable rule or principle. 290 Kan. 803, Syl. ¶ 4. Next, we determine whether the court abused its discretion in finding a pretrial ruling was justified as opposed to a ruling during trial. 290 Kan. 803, Syl. ¶ 5.

7

Here the district court found, based solely on *Evenson*, 295 Kan. at 48-49, that the only proper measure of damages for cases involving damages to trees was "the value of the property immediately before and after the damages are incurred." It found that the statement in *Evenson* that under certain circumstances other evidence, including replacement value, could be properly admitted was mere dicta. So in essence, it found replacement value was irrelevant. But the court went on to find that *Evenson* also stresses that "the basic principle of damages, which is to make a party whole by putting them back in the position that they were before the injury, not to grant the party a windfall profit." See 295 Kan. 43, Syl. ¶ 5. It noted that the requested damages were approximately three and a half times the value of the property, clearly a windfall to Ringneck.

We need not address whether the court was correct in its interpretation of the *Evenson* case for this part of our analysis, because even if it was incorrect, we find it clearly did not abuse its discretion in finding the evidence should not be admitted because it would clearly be unduly prejudicial. Reasonable minds could not differ that introducing such evidence would cause unfair prejudice to the Defendants and confusion to the jury by anchoring in the minds of the jury a damage amount that Ringneck would never be allowed to lawfully recover under any of its causes of action. See *Missouri, Kansas & Texas Railway Co. v. Lycan*, 57 Kan. 635, 642, 47 P. 526 (1897) ("If for any reason the injury to the realty should be in fact less than the value of the thing destroyed, the plaintiff's recovery would be limited to the actual diminution in value of the realty."), *overruled in part by Collins v. Morris*, 97 Kan. 264, 155 P. 51 (1916); *Mosteller v. Naiman*, 416 N.J. Super. 632, 641, 7 A.3d 803 (2010) ("The enormity of the anticipated replacement costs . . . weighs against using that figure as a fair measure of damages. That estimate, which approaches a half million dollars, is almost equal to what plaintiff paid for the entire property, including the land and the two-unit dwelling. As we have noted, damages must be calculated in a manner that is subject to 'the overall limitation of

8

reasonableness.'"). Here the replacement cost with mature trees is over three times the value of the property.

A court always has discretion to exclude evidence as unfairly prejudicial. "[I]t has been recognized as a rule of necessity that trial court may exclude any evidence which may unfairly prejudice a jury. It is the law of this state that even though evidence is relevant it should be excluded if its probative value is outweighed by its prejudicial effect." *Van Hoozer v. Farmers Insurance Exch*ange, 219 Kan. 595, 613, 549 P.2d 1354 (1976). "The balance of probative value and prejudice generally is left to the sound discretion of the trial judge." *Wendt v. University of Kansas Med. Center*, 274 Kan. 966, 979-80, 59 P.3d 325 (2002).

Plaintiff's proposed expert testimony suggests a value for the trees that is more than three times the estimate of the value of the land. This is patently unreasonable as a proper measure of damages. Therefore, it was not an abuse of discretion for the district court to exclude Ringneck's proposed evidence on the replacement costs of the hedgerow with mature trees.

So we turn next to Ringneck's second issue on appeal, the granting of summary judgment in favor of the Defendants.

*We examine summary judgment in general.*

The underlying philosophy of the Code of Civil Procedure is "to secure the just, speedy and inexpensive determination of every action and proceeding." K.S.A. 2019 Supp. 60-102. Keeping with that goal, after pretrial discovery is complete, it may become apparent that a party in a lawsuit has no evidence or no legal support for a material element of the party's claim. If, as a matter of law, the party is not able to prove its claim, the other party may seek what is known as summary judgment. "One of the principal

9

purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The Kansas Supreme Court has noted that summary judgment is a "valuable tool for terminating a lawsuit when its outcome is foreordained." *Stripling v. Star Lumber & Supply Co., Inc.*, 216 Kan. 507, 510, 532 P.2d 1101 (1975).

And in 2018, the Kansas Supreme Court outlined the process as follows.

> """Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied."' [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

Here, Defendants argue that Ringneck cannot prove a material fact, specifically damages. So let us begin with a discussion of damages in general.

*Ringneck seeks damages for four causes of action.*

The principle at the core of the law of damages is that an injured party should recover an amount sufficient to fully compensate it for losses that are the result of the wrongdoer's conduct. See *Scott v. Donald*, 165 U.S. 58, 86, 17 S. Ct. 265, 41 L. Ed. 632 (1897) ("Damages have been defined to be the compensation which the law will award for an injury done."); *Griffith v. State of Colo., Div. of Youth Servs.*, 17 F.3d 1323, 1327

10

(10th Cir. 1994) ("The word 'damages' is commonly understood to connote payment in money for plaintiff's losses caused by defendant's breach of duty."). To warrant recovery for damages, there must be some reasonable basis for a computation to enable the trier of fact to arrive at an estimate of the amount of the loss. *Burnette v. Eubanks*, 308 Kan. 838, 857, 425 P.3d 343 (2018). But "losses need not be proven with mathematical precision through experts." 308 Kan. at 866. Assessing compensatory damages is left to the discretion of the jury. See *Smith v. Printup*, 254 Kan. 315, 324, 866 P.2d 985 (1993) ("There is no question in Kansas that the right to trial by jury includes the right to have a jury determine actual damages.").

Ringneck pleads four causes of action in its petition:  negligence, gross negligence, conversion, and trespass. Each is considered a tort claim. A tort is defined as "a civil wrong, other than breach of contract, for which a remedy may be obtained, usually in the form of damages." Black's Law Dictionary 1792 (11th ed. 2019). "A primary purpose of tort law is that those responsible for the wrong should bear the cost of their tortious conduct." 74 Am. Jur. 2d, Torts § 2. Regardless of all the elements of each of Ringneck's claims, three require proof of an element of actual damages. In other words, Ringneck must establish that it was actually damaged by the acts of the Defendants.

The Defendants, and ultimately the district court, concluded that regardless of the elements needed to establish a duty and a breach of that duty for each of the four claims, Ringneck had no evidence it could submit to the jury regarding damages.

"While the Kansas decisions give the courts a great deal of latitude in arriving at the proper measure of damages depending on the facts present, it appears that all of the various approaches at computing damages have the same ultimate goal:  to make the damaged party whole." *Kansas Power & Light Co. v. Thatcher*, 14 Kan. App. 2d 613, 617, 797 P.2d 162 (1990). "The determination of whether the district court applied the

11

correct measure of damages is a question of law, and therefore, this court's review is unlimited." *Burgess v. Shampooch Pet Industries, Inc.*, 35 Kan. App. 2d 458, 460-61, 131 P.3d 1248 (2006). So we turn to the measure of damages for each of Ringneck's claims.

*The measure of damages related to Ringneck's cause of action for negligence and gross negligence.*

Because we have found that the district court only granted summary judgment on the two negligence claims, we will begin with the damages required for those claims.

A negligence claim requires, as an essential element, proof that the plaintiff suffered actual damages. *Patterson*, 307 Kan. at 622. In the case of a negligence claim due to the destruction of trees, the general measure of damages is the difference between the market value of the land immediately before and after the damage. *Evenson*, 295 Kan. 43, Syl. ¶ 4. However, this is not an inflexible rule, and the parties may present evidence supporting alternative theories of damages, such as when trees have a value independent of their value to the land, such as loss of income from fruit trees or the sentimental value of particular trees. 295 Kan. at 51; see PIK Civ. 4th 171.21. Ringneck has argued from the very filing of its case that the trees removed have a unique value because they increase the quality of hunting on the property independent of the value of the land. Accordingly, it contends that the proper measure of damages is not the before and after value of the land, but the cost to replace the trees—to restore the same quality of hunting as before the negligent act.

The parties generally agree that *Evenson* controls the negligence analysis. But the parties disagree on how *Evenson* applies to this case.

In *Evenson*, the Evensons' property contained a number of pine and fruit trees. The land was used for hunting, camping, and other recreational activities. A neighbor started

12

what was supposed to be a controlled pasture fire but the fire spread to the Evensons' property. Around 200 trees were destroyed by the fire. The neighbor stipulated that he was at fault for the fire and resulting damage. The Evensons filed a negligence suit and sought damages in excess of $75,000. So, like here, the sole issue was the proper measure of damages.

The requested damages were based, in part, on an estimate to replace the burnt trees with trees of comparable sizes—mature trees. The replacement cost was estimated to be around $300,000. That included the cost to install and maintain an irrigation system for the replacement trees.

Another appraiser valued the property itself and estimated that the total damage to the property was less than $5,000. The appraisal considered the "economic and aesthetic value of the trees." 295 Kan. at 45.

Mark Evenson believed that the property was worth $1,000 an acre before the fire and $700 an acre after the fire. But he provided no testimony relating to the value of the property as it pertained to the trees. Nor did he provide evidence that the fruit trees were used in any commercial fashion.

The district court awarded damages of $4,687 for the loss in value of the property and $3,000 for the cost of debris removal. The Evensons appealed.

While considering the case, the Kansas Supreme Court noted that "[t]he purpose of awarding damages to an injured party is to make that party whole by restoring the party to his or her position before the injury." 295 Kan. at 46. The court reasoned that the best way to do so in the case of damaged or destroyed trees was to determine "how the trees were used and their intrinsic value to the property." 295 Kan. at 47.

13

The court noted that "'[g]enerally, courts have measured damages by use of the "before-and-after rule"'" which seeks to determine the difference in market value immediately before and immediately after the trees were injured or destroyed. 295 Kan. at 47 (quoting 22 Am. Jur. 2d, Damages §§ 276-77, pp. 254-56). But the court acknowledge that "'[r]ecovery of the cost of replacing the trees or restoring the premises has been allowed in some circumstances'" *but only if the restoration cost is reasonably proportionate to the value of the real estate*. 295 Kan. at 47 (quoting 22 Am. Jur. 2d, Damages §§ 276-77, pp. 254-56).

The Kansas Supreme Court reasoned that a "flexible approach [was] sensible" when determining how damages should be calculated. 295 Kan. at 48. If, as the court opined, the trees were going to be harvested for lumber, then the lost income could be an appropriate measure of damages. Or if the tree had a "specific, unique value, then the replacement cost of the tree may be the proper measure of damages." 295 Kan. at 48.

But the court noted that those examples are "unusual" and reflect "an exception to the general rule that the value of destroyed trees is measured primarily by the value that those trees had to the surrounding real estate." 295 Kan. at 49. If a party seeks to fall within the exception, there must be a showing "that the trees have a special, inherent value or are essential to the value of the property as a whole, such that they might require replacement if damaged." 295 Kan. at 49.

Ultimately, the Kansas Supreme Court held that the district court did not err by basing its damage calculations on the diminution of the value of real property. 295 Kan. at 51. However, the court went on to say that:

> "If the Evensons had introduced evidence that their trees had any value independent of their value to the land, such as loss of income from fruit trees or the sentimental value of particular trees, then it might have been error for the district court to refuse to consider

14

any other measures of damages. In addition to the loss of value to the land, the court might then have considered other measures of damages, such as aesthetic loss, loss of income production, or even replacement costs." 295 Kan. at 51.

The court noted that the Evensons made little showing that the trees in question had any independent value to the land. While there was some testimony that the family used the land recreationally for picnicking and hunting, there was no showing that the trees were "important to those activities or that the enjoyment of those activities was reduced in any substantial way by the loss of trees in general or the loss of particular trees." 295 Kan. at 51.

Here, the district court interpreted *Evenson* narrowly—requiring Ringneck to present testimony on the value of the property immediately before and immediately after the damage occurred. Because Ringneck admittedly did not have that evidence, the district court granted the Defendants' summary judgment motion—referring only to the law related to negligence claims.

On appeal, Ringneck argues that the district court erred by ignoring the Kansas Supreme Court's statements in *Evenson* that in some situations "the value of trees separate and apart from the land may be an appropriate measure of damages if the trees had a separate or intrinsic value." 295 Kan. 43, Syl. ¶ 3. Ringneck believes that it introduced evidence that the trees had value independent of the land and, therefore, the district court should "'have considered other measures of damages, such as aesthetic loss, loss of income production, *or even replacement costs*.'" See 295 Kan. at 51.

In response, the Defendants argue that the district court was correct because Kansas disfavors windfall recoveries and Ringneck failed to present evidence that the trees had any value independent of the land.

We agree with Ringneck that the Kansas Supreme Court's holding in *Evenson* does not foreclose the possibility that other measures could be used to determine damages in cases involving the destruction of trees—including reasonable replacement costs. While the Kansas Supreme Court made it clear that the difference in market value of the land "immediately before and immediately after the injury to the trees" should ordinarily be used as the measure for damages, the court clearly explained that exceptions do apply. 295 Kan. 43, Syl. ¶¶ 2-4. A large benefit of the "flexible approach" adopted by the court in *Evenson* is that it allows district courts to modify the damage calculation as appropriate in certain circumstances. See 295 Kan. at 48-49. While the court in *Evenson* held that the district court did not err by basing damages on the difference in value of the property before and after the injury occurred, the court was clear to note that with additional evidence a different measure of damages could have been appropriate. 295 Kan. at 51.

But the Evensons did not introduce evidence that their trees had value independent of the land. There was no evidence that the trees were used in a commercial fashion or that there was any sentimental value to the trees. Mark Evenson testified that the land the trees were located on was used for picnicking and hunting, but he did not testify that the trees were important to those activities or that the loss of the trees impacted the enjoyment of those activities.

Ringneck, on the other hand, has alleged throughout the case that the property was purchased and owned for hunting and removal of the trees damaged the quality of the hunting. The Nebraska Supreme Court, which also uses the flexible approach, found that when the plaintiffs held their land for recreational use—a retreat for nature hikes and nature study—they were entitled to recover the cost of replacing trees and vegetation damaged or destroyed by the defendant. *Keitges v. VanDermeulen*, 240 Neb. 580, 590, 483 N.W.2d 137 (1992). It concluded:

16

"[W]hen there is no factual question but that the plaintiffs' intended use of the property is for residential or recreational purposes and the plaintiff seeks only to recover the cost of restoring his property, evidence relating to the land's diminution in value has no relevance, although evidence of the property's value immediately before the damage is relevant." *Keitges*, 240 Neb. at 590.

It is important to note that while replacement costs are a possible measure of damages in this case, the Kansas Supreme Court also made it clear that the damages awarded should not result in a windfall for the plaintiffs. When determining damages, the basic goal "is to make a party whole by putting it back in the position that it was in before the injury, not to grant the party a windfall profit." *Evenson*, 295 Kan. at 52. So even though Ringneck could submit replacement costs as alternative damages based on a reduced value of hunting, the replacement cost of over one million dollars for 155 hedge apple trees was so unreasonable, given the value of the land, that it would clearly be a windfall. So it was not a proper measure of damages in this case. But that is not to say that Ringneck was prevented from presenting evidence regarding the value of the property itself, the estimated loss in value of the wildlife habitat, alternative replacement costs, or any other appropriate calculation of damages. See *Denoyer v. Lamb*, 22 Ohio App. 3d 136, 138, 490 N.E.2d 615 (1984) (finding it is not unreasonable to allow recovery of "the costs of reasonable restoration of his property to its preexisting condition or to a condition as close as reasonably feasible, without requiring grossly disproportionate expenditures and with allowance for the natural processes of regeneration within a reasonable period of time").

Accordingly, we find that if the trees were necessary to fully enjoy the same quality of hunting, then replacement of those trees with saplings at a reasonable cost would eventually return Ringneck to the position it was in before the injury. Thus, it could be a proper measure of damages and not contrary to our Supreme Court's holding in *Evenson*.

17

So we must next examine whether Ringneck submitted sufficient evidence of damages to overcome the Defendants' summary judgment motion.

*The district court erred in granting summary judgment for the Defendants on Ringneck's negligence claims.*

We begin with the general rule that summary judgments should be granted with caution in negligence cases. *Apodaca v. Willmore*, 306 Kan. 103, 106, 392 P.3d 529 (2017). We are required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the nonmoving party. *Fettke v. City of Wichita*, 264 Kan. 629, 632, 957 P.2d 409 (1998).

In its petition, Ringneck claims the following damages for each of his four tort claims:

"As a direct and proximate result of Defendant's actions, Ringneck was damaged in the value of the destroyed trees and other vegetation on its property, plus its loss in the hunting quality of the Ringneck Property. The total value of the destroyed trees is $1,092,361.00 based on a valuation by Paul Weaver, ISA Certified Arborist MW-4888A.

WHEREFORE, Plaintiff prays that the Court enter judgment in their favor and against Defendants for amounts owed as a direct and proximate result of Defendants' negligence in the amount of one million ninety-two thousand three hundred sixty-one dollars ($1,092,361.00) plus the value of the reduced quality of hunting on the Ringneck Property, and for any other further relief that this Court deems just and proper."

After the discovery deadline had past, Defendants filed a motion for summary judgment. See K.S.A. 2019 Supp. 60-256(b) ("A party against whom relief is sought may move, with or without supporting affidavits or supporting declarations . . . for summary judgment on all or part of the claim."). They claimed they were entitled to summary

18

judgment because the "Plaintiff cannot prove damages. In the alternative, Plaintiff's damage claim should be capped at $1,600." As required, they set forth the list of uncontroverted facts upon which they relied. In other words, if these three facts are uncontroverted, they asserted they were entitled to summary judgment.

The three uncontroverted facts the Defendants alleged entitled them to summary judgment were:

"1. Plaintiff does not know the fair market value of the property before and after the removal of the trees. . . .

"2. Plaintiff did not designate any expert to opine on the value of the property. . .

"3. The Defendants jointly designated Gary Naughton (Naughton), a Consulting Forester, as their expert on the diminution in Plaintiff's property value due to removal of the Hedgerow. Naughton estimated the value of the loss of the alleged wildlife habitat at $1,600."

In response to a motion for summary judgment the nonmoving party must respond, in numbered paragraphs corresponding to those used by the movant, as to whether each fact is uncontroverted or controverted. If controverted, the nonmoving party must summarize the conflicting testimony or evidence or any genuine issues of material fact that would preclude summary judgment and give precise references thereto. Supreme Court Rule 141(b) (2020 Kan. S. Ct. R. 205). Failure to do so, means the nonmoving party is bound by the facts that it failed to controvert. But that does not end the case. The court is still required to consider the legal issues based on those uncontroverted facts. See *Plummer Development, Inc. v. Prairie State Bank*, 248 Kan. 664, 667, 809 P.2d 1216 (1991). And the nonmoving party can argue why it believes the uncontroverted facts are not legally controlling of the outcome.

Here Ringneck did not controvert any of the Defendants' uncontroverted facts, so we must deem them to be admitted. Instead, Ringneck submitted its own uncontroverted fact to show that it could still present other evidence to support damages.

"1. Defendants' wrongful removal of the trees in question resulted in a reduction of quality level of hunting on the land, and therefore was damaged."

It attached, in support, an affidavit from a member and manager of Ringneck Farms LLC stating that the property was purchased for hunting and, due to the removal of the trees, there has been a significant reduction in the quality of the hunting resulting in damage. This had been part of Ringneck's claim since the beginning of the lawsuit, so such a claim should have been no surprise. As to alternative evidence, Ringneck indicated both in its written response and in oral argument on the motion for summary judgment that it has evidence of the following, that does not require expert witnesses:

1. The bid it received to plant saplings in place of the trees that were removed

We know of nothing that would prevent Ringneck from putting on evidence, disclosed in discovery, from a fact witness regarding the cost to replace the trees with saplings. We have already found that this is a proper and reasonable measure of damages when the claim is that the trees had some intrinsic value to the property, in this case the quality of the hunting. Ringneck has always claimed it is entitled to replacement costs and having been prevented from putting on the replacement costs of over a million dollars for mature trees, it is entitled to present an alternative to those costs. The estimates for replacement costs with saplings were $79,500 for 156 trees and $40,240 for 90 trees. This does not require speculation and comes as no surprise to Defendants.

20

2. The amount it paid for the real estate

An owner can certainly testify regarding what he or she paid for a property. Moreover, the owners of a ranch are generally competent to testify as to its value. *Fox v. Wilson*, 211 Kan. 563, 582, 507 P.2d 252 (1973); see also *Doug Garber Constr., Inc. v. King*, 305 Kan. 785, 789, 388 P.3d 78 (2017) (A property owner may also testify about fair market value of their own property based on familiarity with the property and values in the neighborhood.). We agree with Defendants that a before and after value, based solely on the loss of the trees, is probably beyond the expertise of a mere owner. Because Ringneck has not presented any evidence regarding the before and after values of the land based solely on the loss of the trees, it will not be able to present that evidence at trial—nor will the Defendants. But Ringneck can present, through the testimony of the owners, the amount it paid for the property and its general fair market value. Ringneck revealed in discovery that the property was bought in 2005 for $600 per acre.

Gary Naughton (Naughton), a consulting forester listed as a nonretained expert by Defendants, opined in his report, incorporated as one of the Defendants' uncontroverted facts, that the property was worth about $2,000 per acre. Surveyor's drawings from both parties indicated the property was less than a quarter section or less than 160 acres. This would place the value of the property at something less than $320,000 by Defendants' estimates.

3. Testimony from the owners, as evidenced by affidavit, that the quality of the hunting on the property was reduced after the trees were removed

We know of nothing that would prevent an owner who hunts on property and bought a property for hunting to testify as to his or her belief regarding the reduction in the quality of hunting after 156 trees were removed. Presumably, the

21

quality of the hunting would not return to the same level as before the destruction of the trees unless the trees are replaced. We note that this is more than the Evensons did. In *Evenson*, there was testimony that the family picnicked and hunted on the land "but [there was] no showing that the trees were important to those activities or that the enjoyment of those activities was reduced in any substantial way by the loss of trees in general or the loss of particular trees." 295 Kan. at 51. Ringneck specifically proffered that the removal of the trees resulted "in a significant reduction of the quality level of hunting on the land."

As the Defendants point out, Ringneck has never suggested that there is an independent monetary value on the loss of the quality of hunting. But that does not defeat Ringneck's claim. The evidence is submitted simply to support a claim of a unique value of the trees unrelated to the value of the land that would justify reasonable replacement costs under *Evenson*.

4. The value of the loss of the hedgerow itself was $1,600.

Ringneck did not controvert the Defendants' statement from Naughton, a consulting forester, regarding the value of the hedgerow itself. This was based on an "estimate of the current fair market land value/acre is $2,000, and the value of the habitat (hedgerow) lost is 25% of that value = $2,000.00 x 3.2 acres x 25% = $1,600.00." This is a measure of damages and one upon which the Defendants agree.

A court has the discretion to allow the jury to consider more than one measure of damages in order to permit flexibility and achieve a just result. *Evenson*, 295 Kan. at 47.

Ringneck did point out that this is simply the value of a portion of the land upon which the hedgerow was located and was not a before and after measure of the value of the land and should not be presented as such. A review of the exhibit attached to support the uncontroverted fact supports Ringneck's position. It can certainly be presented by the Defendants at trial to counter any claim for more than $1,600 to replace the saplings. The Defendants concede this is a measure of damages that can be presented at trial, undercutting their allegation that Ringneck has presented no damage claims.

In reviewing whether summary judgment was appropriate, we can also consider all evidence in the record, not just that evidence cited by the parties. Supreme Court Rule 141(e). We noted that according to arborist Bill Nolde, all but 1 of the 156 trees cut down were Osage orange trees, commonly referred to as hedge apple trees. One was a cottonwood. They were not diseased and appeared firmly anchored in the ground before they were cut.

In sum, the district court erred when it granted the Defendants' motion for summary judgment on Ringneck's negligence claims. In *Evenson*, the Kansas Supreme Court did not universally prohibit replacement cost of trees as a measure of damages in negligence cases. Here, Ringneck has set forth a submissible case that the removal of the trees impacted the quality of hunting thus justifying reasonable replacement costs as a measure of damages. We agree that a party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial. Likewise, mere speculation cannot avoid summary judgment. *Kincaid v. Dess*, 48 Kan. App. 2d 640, 656, 298 P.3d 358 (2013). But all the evidence noted by Ringneck has been provided pursuant to discovery. Even excluding evidence of the value of mature trees at over $1 million, there was sufficient evidence of other quantifiable, nonspeculative damages for Ringneck to proceed to trial.

23

*Ringneck's causes of action for conversion and trespass.*

As we indicated, we find a significant amount of confusion in the record regarding whether the Defendants even argued the other two causes of action, conversion and trespass, or whether the district court considered them. We conclude they were not considered. But even if they were, it was error for the court to find that Ringneck had failed to present evidence of damages as to the remaining claims.

*Conversion*

The tort of conversion is sometimes referred to as civil theft. "The general rule is that the measure of damages for conversion of personal property is the fair and reasonable market value of the *[personal] property* converted at the time of conversion." (Emphasis added.) *Nelson v. Hy-Grade Construction & Materials, Inc.*, 215 Kan. 631, 635, 527 P.2d 1059 (1974); see PIK Civ. 4th 124.81.

> "However, market value of the property is not the only measure of damages recoverable in an action for conversion; the circumstances of the case may require a different standard. Rules relating to the measure of damages for conversion are flexible and can be modified in the interest of fairness. Thus, damages for conversion may include other losses or expenses necessary to compensate the plaintiff for all actual losses or injuries sustained as a natural and proximate result of the defendant's wrong. Where the value of converted goods is not known, the damages may be determined by the amount realized from an unlawful sale thereof; and where the market value fails to furnish the true measure of damages for the conversion of a chattel, the actual damages may be shown by appropriate evidence." 18 Am. Jur., 2d Conversion § 116.

The fair market value of converted or stolen property generally means that amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell but does not need to sell. See *State v. Hall*, 297

24

Kan. 709, 713, 304 P.3d 677 (2013) ("The fair market value of inventory is the price that a willing seller and a willing buyer would agree upon in an arm's length-transaction."). Our Supreme Court has cautioned against the rigid use of "fair market value" in the case of a criminal theft.

> "The rigid adherence to 'fair market value' oversimplifies. While the phrase may capture the best measure of loss in some cases, it may not in all. See *State v. Chambers*, 36 Kan. App .2d 228, 138 P.3d 405, *rev. denied* 282 Kan. 792 (2006) (no discernible market value for used personal lingerie stolen from victim's home); see also *State v. Maloney*, 36 Kan. App. 2d 711, 714-15, 143 P.3d 417, *rev. denied* 282 Kan. 794 (2006) (if property lacks calculable fair market value, restitution amount may be based on other factors); *State v. Rhodes*, 31 Kan. App. 2d 1040, 77 P.3d 502 (2003) (same)." *Hall*, 297 Kan. at 713.

In their appellate brief, the Defendants do not dispute the general rule that once trees are removed from the ground, they become personal property instead of real property and can be the subject of a conversion claim. See *Schulenberg v. Harriman*, 88 U.S. 44, 64, 22 L. Ed. 551 (1874) (while "timber was standing it constituted a part of the realty; being severed from the soil its character was changed; it became personalty" and all remedies are open to the owner including conversion); *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 22-23, 378 P.3d 1090 (2016) (recognizing that natural resources become personal property that give rise to a conversion claim when removed). However, at oral argument they seemed to change course and argue that trees are part of real property and are not subject to a conversion claim. So we are compelled to pause and address this issue by distinguishing the only case that Defendants could be relying on in making such a claim.

In *Muhl v. Bohi*, 37 Kan. App. 2d 225, 152 P.3d 93 (2007), a panel of this court held that trees were not personal chattels when removed from plaintiff's property. Like this one, the case involved the removal of trees to build a partition fence on defendant's property. This court found that a conversion claim would not lie because trees are not

25

personal property but part of the real estate. 37 Kan. App. 2d at 236. In reaching this conclusion, the court relied on *Coats v. Kansas Gas & Electric Co*., 143 Kan. 885, 57 P.2d 41 (1936). But *Coats* did not involve a conversion claim for the removal of trees. It involved a trespass claim for damage to trees when the utility company trimmed them. The trees were not removed from plaintiff's property by the defendant. And the case was dismissed for lack of jurisdiction unrelated to a conversion claim. So we do not find that *Coates* has any application to the facts of *Muhl* and as such we disagree with the panel's conclusions as against the wealth of cases to the contrary. See *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018) (noting that one Kansas Court of Appeals panel may disagree with another panel's decision). We find nothing in existing Kansas Supreme Court jurisprudence that would prevent a conversion claim for cutting down and carrying away trees belonging to another. In fact, as pointed out by Defendants the Kansas Supreme Court has recognized that natural resources become personal property that give rise to a conversion claim when removed. See *Armstrong*, 305 Kan. at 22-23. Other courts that have considered the issue have also concluded that trees become personal property once removed from the ground. See *Jensma v. Allen*, 248 Iowa 556, 563, 81 N.W.2d 476 (1957) (finding an action "'may be maintained for the conversion of property severed from the real estate'"); *Moody v. Whitney*, 34 Me. 563, 565 (1852) (holding that "[t]he trees became personal property as soon as they were severed from the soil, and the wrongful assumption of dominion over them after they were thus cut and fallen, would be a conversion"); *Kingsley v. Holbrook*, 45 N.H. 313, 322 (1864) (finding that when growing trees are severed from the land, they become chattel); *Brand v. Ogle*, ___ N.E.3d ___, 2020 WL 3041280, at *4 (Ohio App. 2020) (finding that once tree is severed from the land it becomes personal property and "'[t]he general rule for the measure of damages in a conversion action is the value of the property at the time of conversion'").

We return to the facts of this case. Determining the fair market value of felled row trees is not easy to ascertain. Although Ringneck alleges that Defendants took the trees, there is no evidence that the Defendants sold them or received anything of value for

them. But one reasonable measure of damages would be the cost of replacement saplings. Ringneck did produce evidence in discovery of the cost of saplings. This would be a reasonable way to make Ringneck whole and—using the flexible approach for conversion claims—it would be a proper measure of damages here.

So to the extent the district court considered the conversion claim, and to the extent it ordered summary judgment in favor of the Defendants on it, it erred.

*Trespass*

Generally, a trespasser is one who enters the property of another without any lawful right or authority, or without an invitation or license. *Armstrong*, 305 Kan. at 22. Because trespass actions claim an injury to another's possession, damages will be inferred without proof of actual damages. *Gross v. Capital Electric Line Builders, Inc.*, 253 Kan. 798, 804-05, 861 P.2d 1326 (1993). The "'[q]uantum of damages depends on extent of injury caused by the invasion. If nothing but the invasion appears, the injury is technical, and is compensated by nominal damages.'" *Longenecker v. Zimmerman*, 175 Kan. 719, 721-22, 267 P.2d 543 (1954); see *Hefley v. Baker*, 19 Kan. 9, 10-11, 1877 WL 955 (1877). A plaintiff that proves a trespass is always *entitled* to at least nominal damages. *Longenecker*, 175 Kan. at 721. This alone is enough to overcome a motion for summary judgment for failure to prove actual damages.

So to the extent the district court considered the trespass claim, and to the extent it ordered summary judgment in favor of the Defendants on it, it erred.

In sum, we affirm the district court's ruling on the motion in limine as it relates to introduction of evidence of damages in excess of $1 million for replacement of trees removed from the Ringneck Property with mature trees. We reverse, however, the district court's grant of summary judgment to the Defendants. Ringneck has presented sufficient

evidence of alternative damages to move forward with trial. Reasonable replacement costs for the purchase and planting of saplings is a proper measure of damages under these facts. Moreover, the owners of the Ringneck Property can testify regarding the purchase price of the Ringneck Property, the current value of the property, the purpose for which it was purchased, and whether they are still able to enjoy the property for its intended purpose.

Affirmed in part, reversed in part, and remanded with directions.